SOULARD *et al.*, Appellants, *vs.* ALLEN, Respondent.

1. A certificate of confirmation issued by recorder Conway, in 1834, of a claim included in Hunt's list of confirmations under the act of 1824, is *prima facie* evidence of all the facts necessary to a confirmation by the act of 1812.

2. An official survey is *prima facie* evidence of the boundaries and location of the land confirmed.
3. Where a map, which is referred to in a deed for the boundaries and location of the land confirmed, is lost, another map, which is proved to be one of three originals, is admissible in evidence.

*Appeal from St. Louis Court of Common Pleas.*

*E. & B. Bates*, for appellants. I. The title of the plaintiffs is perfect, as against the government, and superior to all other titles, unless the right of the city to the commons be the better title. II. The locality of the plaintiffs' land is certain, and their actual possession of it commenced in the year 1800. III. The actual survey in the names of Gervais and Ortiz, (by which the defendant claims,) is wrongly located, being laid down on wrong courses, and being a good way north of the proper position. The survey as made is simply arbitrary; it refers to nothing antecedent to prove its propriety; it is not pretended that it i made as it is, in order to conform to possession or improvement; and it is a direct departure from the terms of the grant, so far as courses are concerned. By the terms of the grant the lines were to run "north and south" and "east and west." There was no occupancy under the grant, and there is no indicium of the courses of the lines but the terms of the grant, and they are perfectly plain. IV. The defendant showed no title under Gervais and Ortiz or either of them. The grants or concessions to Gervais and to Cambas and Ortiz contain the express condition to be void, if the land be not established in a year and a day. The land never was established or occupied, and the grants became void by their terms before the beginning of Soulard's title in 1798. Besides, if the grants had not become void by failure of the conditions, they were barred by negligence, in not being presented for confirmation. *Les Bois v. Bramell*, 4 Howard, 258–9. The certificate issued by recorder Conway, dated April 12, 1834, is simply void, he having no power to issue it. *Gamache v. Piquignot*, 17 Mo. Rep. If, however, he had power

to certify at all, this certificate is wrong. He does not certify that the requisite facts were proved, nor that any claim was made before him or his predecessor. The certificate is double, and thus against the statute; it divides the tract of Cambas and Ortiz into two parts, and arbitrarily unites one of them with the tract of Gervais. Again, no certificate of confirmation could have been issued lawfully either by Mr. Conway or his predecessor, because the lands certified are not *lots*. The question what is a lot is for the court, as a matter of law. *Page* v. *Scheibel*, 11 Mo. Rep. 167. *Biehler* v. *Coonce*, 9 Mo. Rep. 347. *Macklot* v. *Dubreuil*, 9 Mo. Rep. 489. If these claims be *lots*, then Soulard's title is perfect under the act of 1812, for he had a paper title from the Spanish government, a subsisting claim on the 13th June, 1812, and actual possession of the land by surveyed boundaries in 1800. Hunt's list was no evidence. It was made for the information of the surveyor general, and not as evidence of title for the party. The party has better evidence, viz, the certificate, and to admit the list would be violating the rule of law that the best evidence must be produced. V. Supposing the commons title to be the best, the plaintiffs have the elder and better title under the city, for that part of the survey which lies within the common.

*Geyer & Dayton*, for respondent. I. The extract from the list certified by Hunt, under the act of 1824, to the surveyor general, and the certificate of the recorder are not only competent evidence, but they establish *prima facie* confirmations by the act of 1812. *Janis* v. *Gurno*, 4 Mo. Rep. 458. *Gurno* v. *Janis*, 6 Mo. Rep. 330. *Macklot* v. *Dubreuil*, 9 Mo. Rep. 477. *McGill* v. *Somers*, 15 Mo. Rep. 80. The present recorder, though he cannot decide on the evidence, is as competent by the terms of the law and upon principle to certify the conclusions of his predecessor as to certify a confirmation by the commissioners, or a decision by them, which he is not authorized to make. There is no evidence whatever to rebut the *prima facie* evidence of title made by Hunt's list and the re-

corder's certificate. There is no evidence, as in *Gurno* v. *Janis*, 6 Mo. Rep. of inhabitation and cultivation by another prior to December 20, 1803, nor that the recorder had certified a confirmation not ascertained by Hunt, but an opinion of his own on the evidence, as in *Gamache* v. *Piquignot*, 17 Mo. Rep. II. The confirmation of a lot by the act of 1812, though within the commons, vests the title as against the inhabitants of St. Louis. The act does not confirm as commons all land within the out-boundaries, but only such part as was common on the 20th of December, 1803. Land previously granted, or inhabited, cultivated or possessed as private property, remained such, and, if a lot, was confirmed as private property. III. The official survey is a part of the confirmation, and determines *prima facie* the boundaries and location of the land possessed and cultivated. *Macklot* v. *Dubreuil*, 9 Mo. Rep. 473. *Page* v. *Scheibel*, 11 Mo. Rep. 167. *Boyce* v. *Papin*, ib. 16. *McGill* v. *Somers*, 15 Mo. Rep. 80. That the grant to Madame Chouteau calls for lines north and south, east and west, is no impeachment of the survey. 1. The confirmation was upon cultivation and possession, not according to the grant. 2. The survey conforms to the courses as nearly as usual or proper, where, as in this case, it was necessary to conform to other grants adjacent, which had the same calls. 3. The question, whether the survey was correct or not, was referred to a jury and they affirmed its correctness. IV. The defendant having the legal title to the land in controversy, as against the inhabitants of St. Louis, and the confirmations to Soulard and his representatives, the titles set up by the parties, under the city, are wholly immaterial. But an examination of the respective pretensions will show that the plaintiffs did not establish any title under the city, as against the defendant.

SCOTT, Judge, delivered the opinion of the court.

This was an action of ejectment, commenced in 1848, by the plaintiffs, Soulards, against Allen, to recover posses-

sion of a tract of land in the city of St. Louis, containing fifty acres.

The plaintiffs claim as the legal representatives of their father and mother, Antoine and Julia C. Soulard. The plaintiffs claim under a concession made to their ancestor, Antoine Soulard, by Zeno Trudeau, lieutenant governor of Upper Louisiana in 1798, for 204 arpens and a fraction, which was surveyed by the then surveyor of the province in 1800. This concession, together with notice of claim, was filed 15th December, 1813, with the recorder of land titles, and 56 arpens and a fraction thereof were reported for confirmation, and were confirmed by the act of 29th April, 1816. The rest of the claim was then abandoned as interfering with the St. Louis commons ; it was afterwards reported for confirmation by the last board of commissioners, and was confirmed by the act of 4th July, 1836. The entire claim was surveyed under the authority of the United States in 1818, and was again surveyed in 1838. Most of the land claimed by the parties to this suit is within the boundaries of the survey of the St. Louis commons. We will first only speak of such portion of it as is without those boundaries. The defendant claimed under a concession made by the French lieutenant governor in 1767, to Madame Chouteau, for 4 by 40 arpens ; a report of the recorder of land titles in favor of confirmation, upon cultivation and possession prior to the 20th day of December, 1803, to be surveyed, which report was confirmed by act of 29th April, 1816, and the land was surveyed in April, 1818 ; a concession of two by forty arpens to Gervais, and a grant of the same quantity to Cambas and Ortiz, both made by the French authorities in 1767 ; a certificate of confirmation, issued by the recorder of land titles, under the act of 26th May, 1824, by which it is certified that, under the act of 13th June, 1812, there was confirmed to Gervais' legal representatives a tract of two by forty arpens, and to Ortiz's legal representatives a tract of one by forty arpens, which two tracts were surveyed together and included in one survey made in 1834. This is certified as

Soulard *v.* Allen.

correctly copied from the book containing the record of the original confirmation certificates, and is dated the 12th April, 1834, signed, Fred. Conway, recorder.

1. Thus it will be seen, that this case presents a conflict of titles between a confirmation under the act of the 13th June, 1812, and a confirmation under the act of 29th April, 1816. If both titles cover the same land, it is clear that the title under the act of 1812, being prior in point of time, must prevail over one posterior in date. No part of the confirmation under Madame Chouteau's claim conflicts with the claim of the plaintiffs; that claim being used only to show the locality of the concessions to Gervais and Ortiz, whose claims were confirmed by the act of 1812, and conflict with the plaintiffs'. The point, whether Soulard's claim was confirmed under the act of 1812, is not raised by any of the instructions.

The abstract from the recorder's book, under the act of 26th May, 1824, and recorder Conway's certificate, showing that the claims of Gervais and Ortiz were confirmed under its provisions, were read in evidence by the defendant and excepted to by the plaintiffs. It is not pretended, that the recorder, in 1834, had any authority to receive proof of inhabitation, cultivation or or possession under the act of 1824. Indeed, all the claimants were limited to eighteen months from the passage of the act, within which time they were required to designate their lots by making the necessary proof. The recorder does not assume the exercise of any such power. His certificate purports to be a copy of what appears upon the books of his predecessor, who was authorized to receive proofs. This court has held that the abstract of the confirmations made by recorder Hunt, who was in office at the passage of the act, was evidence, equal in character to the certificate of the recorder himself. The act of recorder Conway is nothing more in effect than the giving a certified copy of the records of his office, and it is an established principle, that all officers entrusted with the custody of an official document, may give copies thereof, which will be admissible evidence. But there was also in evidence a copy of the abstracts

of the confirmations made by recorder Hunt, and even if the certificate of recorder Conway was informal, yet, under the decisions of this court, that abstract is as good evidence as a certificate formally made and delivered by recorder Hunt himself, who received the evidence of the facts entitling claimants to lots under the act of 1812.

In order to be entitled to a confirmation under the act of 1812, it is not necessary that notice of a claim should have been filed with the recorder under the acts of congress for adjusting land claims, within the time prescribed by those acts. The objections, that the concessions were void by the terms of them, because they were not occupied within a year and a day; that one of the concessions was to Cambas and Ortiz, and only half of it was acted on by the recorder, that the land confirmed was no lot, cannot now be entertained in this court.

Under repeated decisions made here, the certificate of the recorder is *prima facie* evidence ; it is evidence that the claimant inhabited, cultivated or possessed the land claimed, prior to the 20th December, 1803, which entitles him to be confirmed. It is *prima facie* evidence that the land confirmed is a lot. Ortiz based his claim on a joint concession to him and another ; he claims one half of it, and shows possession; it is for that he is confirmed; it is that which identifies the land conceded. As possession is the motive to the grant, and as he showed his possession, which was confined to so much as he was entitled to, there seems to be no valid objection to his claim on that score. Had he shown possession of the whole concession, notwithstanding it was a joint one, he would have been entitled to the whole. Surely he is not in a worse condition for only claiming half. He could renounce or abandon part of his claim. These matters have all been passed upon by the jury, under suitable instructions from the court. The certificate or abstract was only *prima facie* evidence. The plaintiffs have had an opportunity to overthrow it; they have failed to do so, and now the objections which were urged against it, to the jury who tried the cause, cannot be renewed in this court.

2. The survey of the Gervais and Ortiz confirmation is presumed to be correct ; it is under a grant prior to that under which the plaintiffs claim. The survey annexes itself to the confirmation, and *prima facie* shows the land granted. If the survey was wrong, that was a matter to be demonstrated to the jury ; no objections can now be taken to it. The objection that the lines of the survey did not run due north and south, according to the terms of the concession, can have no weight. The concessions to Gervais and Ortiz were made in reference to other concessions ; they conformed to those calls and the survey does the same thing. The survey is evidence of the locality of the land confirmed by the act of 1812 ; that act granted what was inhabited, cultivated or possessed. In the event of a variance between the terms of the concession and the land cultivated, the latter will be deemed the land confirmed under the act of 1812. The evidence in the record is ample to show that Madame Chouteau's concession, which was the southern boundary of that of Gervais, was in the prairie south of Little river.

3. The greater portion of the claims, both of the plaintiffs and defendant, being covered by the St. Louis commons, they acquiescing in the claim of the city, obtained deeds from her under the act of the general assembly, entitled " an act to authorize the sale of the St. Louis commons," approved March 18, 1835. In conformity to the provisions of this act, a resolution was passed by the board of aldermen, under which a deed was made to Julia C. Soulard, the mother of the plaintiffs, for a tract of land lying in St. Louis county, near the city of St. Louis, and being in the survey of the St. Louis commons, and entered as the claim of Antoine Soulard, number 2016, in the plat returned by Charles De Ward, city surveyor, in the year 1836, containing 122 acres 14-100.

This deed was dated May 2d, 1836. Charles De Ward, the surveyor, made three maps of his survey of the commons. On these plats, the claim of Antoine Soulard (number 2016) was

laid down north of the claim of Russell, and did not interfere with it. The city, on the 4th March, 1837, conveyed to William Russell all the land owned by him in the concessions to Madame Chouteau, Gervais and Ortiz, within the survey of the commons, with some exceptions, which do not affect this case. The conveyance is made with special reference to the plat of survey of the St. Louis commons, as showing the precise localities and boundaries of the said land. The map used by the board of Aldermen was lost, and evidence was given showing that a map in a glass frame in the city register's office, was one of the three original maps made by De Ward, as was also another map found in a box in that office. Those maps were then given in evidence by the defendant, to which exceptions were taken. Exceptions were also taken by the plaintiffs to the refusal of the court to suffer secondary evidence of the plat used by the board of aldermen, in making compromises with private claimants within the boundaries of the survey of the commons.

The question, whether the map produced was one of the three original plats returned by De Ward, was properly submitted to the jury, under instructions from the court. The verdict having responded affirmatively to the question, it is clear that, as the deed to Mrs. Soulard was according to the plat returned by De Ward, only that claim on the plat, numbered 2016, was conveyed to her by the deed of the city. However strong her equity might be, as against the city, to have the deed reformed, as against Russell, it has no foundation in justice. All the land in dispute covered by the commons was conveyed by the deed of the city to William Russell, under whom defendant claims. The objection that the deed was not properly acknowledged is untenable, as the title passed by the execution of the deed, and not by its acknowledgment.

There was no error in the court in refusing secondary evidence of the plat used by the board, as a duplicate original of that plat was produced. Upon the whole, the case was

fairly submitted to the jury, under proper instructions, and we see no reason for disturbing the judgment of the court below. Judge Ryland concurring, the judgment will be affirmed; Judge Gamble not sitting.