TAYON AND OTHERS, Respondents, v. HARDMAN & PAGE, Appellants.

1. The confirming force of the act of Congress of June 13th, 1812, extends to common field lots, &c., as well outside of as within the survey of the outboundary line of the town of St. Louis, the plat of which survey is commonly known as "Map X."
2. Where several persons unite in petition for a commission to perpetuate testimony, a verification of such petition by the affidavit of one of such petitioners is sufficient.

*Appeal from St. Louis Circuit Court.*

*W. L. Williams, J. R. Shepley*, for appellants.
*S. Reber*, for respondents.

RYLAND, Judge, delivered the opinion of the court.

This is a suit in the nature of an action of ejectment. There was a trial by a jury and the court gave the following instructions in behalf of the plaintiff: "1. If the lot described in the plaintiffs' petition was one of a series of lots lying adjacent to each other in the same general range in the Grand Prairie of St. Louis, and in the vicinity of the village or town of St.

Louis, and said lots were occupied and cultivated by the inhabitants of said village in a common field prior to the 20th December, 1803, then said lot is a common field lot within the meaning of the act of June 13th, 1812. 2. If the jury find from the evidence that François Bequette, prior to the 20th December, 1803, was an inhabitant of the town of St. Louis, and before that day possessed or cultivated a common field lot, of one arpent in front by forty in depth, in the Grand Prairie, and that he and his representatives claimed the sam · as owners, then the said lot was confirmed by the act of June 13th, 1812. 3. If the jury believe from the evidence that the lot sued for was a common field lot, within a common field belonging to the town of St. Louis, and cultivated by the inhabitants of said town prior to the 20th December, 1803, then the survey of the outboundary line of said town, given in evidence, does not bar or preclude the plaintiff from a recovery in this action. 4. A confirmation by the act of 13th June, 1812, gives a better title than one derived from a New Madrid location."

The court also gave the following for the defendants : " 5. If the jury find from the evidence that the land sued for was not cultivated and claimed as his own land by François Bequette prior to the 20th of December, 18 3, they will find for defendants ; and, in determining the question of cultivation and claim, the identical land cultivated and claimed must be proved by plaintiffs. 6. In determining the true location of the land sued for, the jury are not to take into consideration the surveys made and approved by the United States for c nfirmed claims, except so far as said surveys agree with the parol proof of location introduced in this cause. This case depends upon parol proof entirely ; must rest upon such proof as introduced, unaided by any survey of confirmed lands, unless such survey agrees precisely with the parol proof. 7. If the jury find from the evidence that the plaintiffs claim title under François Bequette, and it appears by proof that François Bequette died without having cultivated the land in dispute, they will find for

the defendants. 8. Unless the jury can determine from the quantity of the land sued for, to which plaintiffs are entitled by inheritance and purchase, they will find for defendants. It is the duty of the plaintiff to make out the whole case by proof before the jury."

The court refused to give the following, asked by defendants : " 1. There having been no concession or grant or permission of any kind to cultivate the land in dispute produced by plaintiffs from the Spanish and French authorities, and it appearing by proof that there was no cultivation of, or claim asserted to, said land from about the year 1796 or 1797 up to the 13th June, 1812, and no claim or possession of said land by the plaintiffs, their ancestors, or any one claiming to own the same in common with them, prior to about the year 1845 or 1847, the plaintiffs are not entitled to recover in this suit. 2. The land in dispute having been proved to be outside of and beyond the outboundary made under and by virtue of the first section of the act of June, 1812, and approved 8th December, 1840, introduced in evidence by defendant, the plaintiffs, under the case as made out, are not entitled to recover. 3. If the jury believe from the evidence that the land in dispute lies beyond and outside of the outboundary survey made under and by virtue of the first section of the act of the 13th day of June, 1812, and approved on the 8th December, 1840, introduced in evidence by defendants, the plaintiffs are not entitled to recover in this action upon the proof before them."

There was a verdict and judgment for the plaintiffs, and an appeal by defendants to this court.

On the trial, the plaintiffs offered the perpetuated testimony of Antoine Smith, which was objected to by defendants but admitted by the court. This perpetuated testimony, and the restrictions refused by the court, and given also by the court, form the only grounds relied on by the appellants for a reversal of this judgment. The plaintiffs claim under the act of June 13, 1812, a common field lot, without any documentary title or of claim outside of the outboundary survey of the town

of St. Louis. The plaintiffs' claim rested on the occupation, possession and cultivation of the lot prior to December 20th, 1803, by François Bequette, who claimed the lot as his property ; it was a lot in a common field belonging to the ancient town of St. Louis and situated in the Grand Prairie, near the town. The plaintiffs derive title from Bequette either as heirs or purchasers of heirs. The defendant, Hardman, was tenant of Page, who claimed under the New Madrid location, of Martin Coontz, No. 145, survey No. 2499. Patent certificate issued by Recorder Bates, November 17, 1822. It was admitted at the trial that Page holds all the title conferred by Coontz's location.

There are but two questions of importance for our determination. The outboundary question is one, and the perpetuated testimony offered here gives rise to the other. I will give my views on the outboundary first. The point made by the appellant is, that the land in controversy, not being included in the survey of the outboundary of the town of St. Louis, can not now be shown to be a common field lot confirmed by the first section of the act of 13th June, 1812. The question has already been considered in the case of Hortiz v. Milburn et al., in which the opinion is filed at this term. It is in that case laid down that the survey of the outboundary line is not a muniment of title to a lot confirmed by the act, and that the first section confirms the titles to the lots inhabited, cultivated or possessed as required by the act, without waiting for the survey of an outboundary. It may now be observed, in support of this view, that the cases that have been decided in this court from the earliest day to the present time, have taken the confirmation of a lot possessed prior to 1803 to be complete by the act of 1812, without any regard to the question whether an outboundary had been run or not. In no such case does it appear ever to have occurred to the counsel or the court to inquire whether the property was included in a survey of the outboundary of the town; nor could the fact have affected the title. The survey of the outboundary was not the survey of

the lots confirmed, no was an individual, as the owner of a lot, interested in the question where the line should run. If his lot was confirmed by the act, the confirmation was not annulled by the outboundary being so run as to exclude his lot. If the owner of a tract of land, granted as an ordinary farm in the vicinity of the town, should find his farm included in the outboundary, when it was neither a common field lot nor an outlot, he could not claim that his title, although not originally confirmed in June, 1812, became confirmed by the fact that it was included in the outboundary surveyed many years afterwards. The outboundary has no effect upon the question of confirmation as a question to be determined by the courts upon proof of cultivation or possession of a lot prior to December, 1803. The operation of the first section of the act is to give a present confirmation where it applies, as has been held over and over in this court ; and that confirmation is complete without the survey of the outboundary. This point must be therefore determined against the defendants.

In regard to the perpetuated testimony, the objections of defendants are not, in the opinion of this court, well taken. By the second section of the " Act to amend an act concerning perpetuating testimony," passed in March, 1851, the petition is not required now to be under the affidavits of all the petitioners ; the affidavit of any one or more of them is sufficient. The act of 1845 required the affidavit of the applicant, the law supposing but one person to petition in order to perpetuate testimony. But the amending act does not require the affidavit of all the petitioners—any one or more may make affidavit thereto, and that will be sufficient. The service of the notice on Mr. Page we think good. The objections, therefore, are considered without weight.

The instruction first refused on the defendants' behalf was properly refused. No doubt but what there were at that day persons who abandoned the lands claimed by them, and originally occupied by them. Persons often moved from one part to another with the intention of a permanent change of resi-

dence, abandoning the fields cultivated heretofore and seeking new ones. Our notions of the present day differ widely from the practices and habits of the old French and Spanish people occupying the early villages and setlements of this country. Land was plenty—population scarce,—you had but to ask for, and leave was given, to occupy, possess and cultivate. To change residence from one part to another was frequent and usual among the people engaged in trapping and hunting—abandonment consists of act and intention, — leaving the old place with the intention of finding and making a new one, and without any design to return and occupy the old again. The court would no doubt have given such an instruction, if asked for, plainly indicating its views on this subject of abandonment; but the instruction refused was not of this character. The other instructions relate to the question of authority, and were, according to the views of this court on that subject, properly refused.

Upon the whole record, the judgment below must be affirmed, the question of outboundary and perpetuated testimony being the only questions of any importance saved for the opinion of this court. The other judges concurring, the judgment below must be affirmed.