MILBURN *et al.*, Plaintiffs in Error, v. HARDY, Defendant in Error.

1. The survey of the outboundary line of the town of St. Louis—the plat of which is commonly known as "Map X"—is not conclusive upon persons claiming title under confirmations by virtue of the first section of the act of Congress of June 13, 1812; said act is operative to confirm to individuals common field lots and out-lots as well without as within said outboundary line as established by said survey.
2. The certificates of confirmation issued by Recorder Hunt under the act of Congress of May 26, 1824, are *prima facie* evidence of title by virtue of the act of Congress of June 13, 1812, as against persons claiming by title emanating from the United States in the year 1820.
3. So also surveys by the United States of the lots embraced in the certificates issued by Recorder Hunt under said act of May 26, 1824, are admissible in evidence as against persons claiming by titles acquired from the United States prior to the passage of said act of May 26, 1824.

*Error to St. Louis Circuit Court.*

This was an action of ejectment brought by William Milburn and others, as commissioners appointed by the St. Louis county court under authority of an act of the general assembly of March 3, 1851, to recover possession of part of fractional section sixteen, in St. Louis township. At the trial, the plaintiffs adduced the following evidences of title: 1. An act of Congress of March 6, 1820, entitled "An act to authorize the people of the Missouri territory to form a constitution and state government, and for the admission of such state into the Union on a footing with the original states, and to prohibit slavery in certain territories." 2. An ordinance, passed on the 19th of July, 1821, by the representatives of the people of Missouri in convention assembled, declaring the assent of the people of the state of Missouri to certain conditions and provisions of said act of Congress of March 6, 1820. 3. An act of the general assembly of the state of Missouri approved March 3, 1851, entitled "An act to authorize the sale of fractional section sixteen, township forty-five north, range seven east." 4. An order of the St. Louis county court made April 11, 1851, appointing the

plaintiffs commissioners under said last mentioned act.    5. Field notes of Brown's survey, made in 1818, of fractional section sixteen.    6. An authenticated plat of township forty-five north, range seven east, certified by the surveyor general of Illinois and Missouri, on the 17th of March, 1845, to be a true copy ; and an authenticated plat and description of the survey of the outboundary of the town of St. Louis, as established by the surveyor general.    7. It was agreed that the land in controversy lay without the exterior limits of said outboundary survey ; also that at the commencement of this suit defendant was in possession of a part of said fractional section sixteen.

The defendant, to maintain the issue on his part, read in evidence the act of Congress of June 13, 1812; also the act of Congress of May 26, 1824.    The defendant then offered in evidence the proceedings of recorder Hunt under said act of May 26, 1824, in respect to the claim of Louis Laroche's representatives.    The plaintiff objected to the admission of the same and insisted that the same was incompetent; " first, because, in so far as said proceedings can in anywise affect the land now in controversy, the same were had and the proofs therein taken without any notice to the state of Missouri, to the inhabitants of township forty-five, or to the plaintiffs ; second, because said proceedings, so far as they affect the land in dispute, were repugnant to the constitution of the United States and of the state of Missouri, and in derogation of the sovereignty of the latter."    The court overruled the objection and admitted the proffered evidence.    The evidence thus admitted consisted of Hunt's minutes of testimony taken in 1825 under the act of Congress of May 26, 1824, in support of the claim of Louis Laroche's representatives to a lot of one by forty arpens in the Grand Prairie of St. Louis ; also an extract from Hunt's list of certificates of confirmation issued under said act.    From this it appeared that a certificate of confirmation had been issued to Laroche's legal representatives.    The defendant also introduced in evidence an extract duly authenticated, from the list of

confirmations furnished by recorder Hunt to the surveyor general.

The defendant then tendered in evidence a paper purporting to be a survey, duly certified by the surveyor general, of the lot of Louis Laroche's representatives as proved before recorder Hunt in the proceedings just set forth above, being United States survey No. 1665. The plaintiffs objected to the admission of this paper, because, " 1. The survey, in manner and form as the same appeared to have been made, was not authorized by law. 2. Said survey embraced the land in controversy, which the United States had absolutely sold and granted to the state of Missouri more than thirty years before the date of such survey." The court overruled the objection and admitted the survey. Said survey was approved May 23, 1857.

The defendant then gave in evidence, without objection, a confirmation certificate issued to Laroche's representatives by Adolph Renard, United States recorder of land titles, on the 3d of September, 1857.

The defendant then offered the deposition of Jacques Noisé to prove that Louis Laroche, prior to December 20, 1803, cultivated the land in controversy as a lot in the Grand Prairie " under circumstances causing the same to be confirmed by the first section of the act of Congress of June 13, 1812." " The plaintiffs objected to the reception of said testimony on the ground that it was not competent for a party claiming under that section to adduce testimony to show that the subject of confirmation was situate beyond the outboundary line established by government." The court overruled the objection and permitted the testimony to be read.

It was admitted by plaintiffs, for the purposes of this suit, that all the title of Louis Laroche or his representatives in the land in dispute had become vested in the defendant, and that said Laroche's claim as separately surveyed covered the same.

The court, of its own motion, gave the following instruction : " By virtue of act of Congress of March 6, 1820, and

the ordinance declaring the assent of the people of the state of Missouri thereto, dated July 19, 1820, whatsoever title the United States may have had in the land described in plaintiffs' petition at the time of the passage of that act, if it be the sixteenth section or a fractional part thereof, passed to and vested in the state of Missouri for the use of schools; and by the act of the legislature of this state, approved March 3, 1851, and the order of the county court read in evidence (if you find that order genuine,) the plaintiffs have the right to sue for said land; and if you find that the defendant, at the commencement of this suit, was in the possession of any portion of said land, you should find for the plaintiffs, unless you believe defendant has shown a better title as hereinafter mentioned. So far as this case is concerned, the defendant admits that at the commencement of this suit he was in the possession of the premises described in the petition, and the plaintiffs admit that whatsoever title to the land in possession of the defendant may have been at any time in Louis Laroche was, at the commencement of this suit, and now is, vested in the defendant." The court then, at the instance of the defendant, gave the following instructions: " 1. If the jury find from the evidence that a tract of land, of which the premises in possession of defendant at the commencement of this suit are a part, was cultivated by Louis Laroche prior to December 20, 1803 ; that said Louis Laroche was, at the time of such cultivation, an inhabitant of the town of St. Louis; that said tract of land was situate in the Grand Prairie, in the neighborhood of said town, and was used by Louis Laroche for the purposes of cultivation, and was one of a series of lots of similar form and character also used by inhabitants of said town for the purposes of cultivation, and lying adjoining to each other in the same general range of lots, then the plaintiffs are not entitled to recover. 2. If the jury find from the evidence that on the 3d day of March, 1825, Louis Laroche designated the lot, of which the premises in possession of the defendant at the commencement of this suit are a part, as being confirmed to

him by the act of Congress of June 13, 1812, entitled ' An act making further provision for settling claims to land in the territory of Missouri,' on the ground of inhabitation, cultivation or possession prior to December 20, 1803, by proving before the recorder of land titles of said territory the fact of his cultivation and possession thereof and the boundaries [and] extent of said lot, and that said recorder did thereupon issue a confirmation certificate for said lot to said Louis Laroche, and furnish the surveyor general of said territory with a list of the lots so proved, in which list was that of the said Laroche, which lot was afterwards surveyed by said surveyor general and the survey thereof approved by him on the 18th of March, 1857, and on the 17th of July, 1857, returned by him to the office of said recorder, who on the first day of August, 1857, issued his certificate of confirmation thereof, then the plaintiffs can not recover in this suit."

The court refused the following instruction prayed by plaintiffs : " 1. The jury are instructed that the several matters of proofs adduced by the plaintiffs, if genuine, are effectual to show that the title to the land in dispute was vested in the state of Missouri on the 19th of July, 1820, and that the same title has become vested in the plaintiffs. 2. The jury are further instructed that the proceedings and proofs before recorder Hunt under the act of Congress of May 26, 1824, read in evidence by the defendant, have no force or effect as against the title of the state of Missouri acquired in the year 1820. 3. The jury are further instructed that the survey of the outboundary read in evidence is to be considered by them as the official and authenticated survey of the outboundary directed to be run by the act of Congress of June 13, 1812, binding on all parties claiming a confirmation by force of the first section of said act, and that all the evidence adduced by the defendant to show that the lot of Louis Laroche was situated on the land in controversy outside of the outboundary as marked by such survey ought to be disregarded by the jury." The jury found for defendant.

*Field* and *Bates*, for plaintiffs in error. *

*Polk*, for defendant in error.

NAPTON, Judge, delivered the opinion of the court.

One of the questions presented by this record is, whether the act of 13th June, 1812, confirmed any lot outside of the outboundary directed by that act to be run by the surveyor general; and upon this question it is deemed unnecessary to add any thing to what has already been said in the cases involving this point. (Milburn v. Hortiz, 23 Mo. 536; Tayon v. Hardeman, 23 Mo. 539; Schultz v. Lindell, 24 Mo. 567.)

The only question discussed in this case was the admissibility of the proceedings before the recorder of land titles (Hunt) under the act of 26th May, 1824, and the certificate of his successor (Renard) of a confirmation to Laroche of the lot in controversy under the act of 13th June, 1812, and the survey made by the surveyor general of the United States or under his directions in 1855. This testimony was objected to because it was all made under a law passed subsequent to the consummation of the plaintiffs' title and without any notice to the state of Missouri or the plaintiffs claiming under the state, and because it was repugnant to the constitution of the United States and of this state, and in derogation of the sovereignty of this state.

By the act of 13th June, 1812, the United States was divested of all title to the property described in the first section of that act as confirmed to private claimants. The act was a grant, *proprio vigore*, and the title of each claimant under it was complete at its date, and he could maintain his ejectment upon mere proof of inhabitation, cultivation or possession, without any further or other evidences of title. In 1824, however, Congress, with a view to prevent the embarrassment which claimants under the act of 1812 would necessarily experience from a dependence on the fleeting mem-

---

* There are no briefs of counsel on file in this cause.—[REP.

ory and uncertain lives of witnesses, and to furnish to the government also the means of distinguishing the public from the private lots, authorized the recorder of land titles to receive proof from the claimants of their cultivation, inhabitation or possession, and the extent and boundaries of the same, and to issue certificates of confirmation to such persons as made satisfactory proof thereof. It was to promote the convenience of claimants that this act directed them to appear before the recorder within a limited period and make their proofs, so that the recorder could give them certificates of confirmation. Upon these certificates, by an act of the legislature of Missouri, an action of ejectment could be maintained; and, by the decisions of the courts here, they have been held *prima facie* evidence of title in the claimants under the act of 1812 against all the world, and conclusive on the United States and the claimants who accept them. But. the act of 1824 also had in view the convenience of the government in procuring a distinct designation of the public property within the towns and villages subject to be reserved for military purposes or to be subsequently appropriated to the use of schools. For this purpose the recorder was directed to furnish his list of confirmations, with their extent and boundaries, to the surveyor, to serve him as a guide in discriminating the private from the public lots, the latter of which he was expressly ordered to survey.

The act of 13th June, 1812, did not contemplate any survey of the private lots, probably on the supposition that they had been already surveyed or designated under the former government, or could be easily distinguished by their occupation or cultivation. But the act of April 29, 1816, expressly required a survey of all confirmations made previous to its passage, as well as all which might thereafter be made. The act of 1824 does not in express terms order a survey of the private lots, perhaps for the reason that the act of 1816 had already directed it; but as the surveyor was, even under the act of 1824, required to distinguish the private from the public lots, and expressly required to survey the latter, it might

be inferred that the performance of the duty expressly enjoined necessarily implied a survey of each class of lots. However this may be, as the act of 1816 undoubtedly gave the authority to survey the private claims, it is not material that such authority should be construed to be a second time conferred upon him by the act of 1824. The practice, it is believed, has been, after the date of the act of 1824, for the surveyor to have the common field lots as well as the commons surveyed, either by virtue of this last named act or the preceding one of 1816 ; and such surveys have been regarded as legitimate evidence in the courts of this state and the federal courts. A survey of the commons, it is true, was expressly directed by the act of 1824, but it was only in cases where they had not been previously surveyed. If the certificates of confirmation be admissible to prove a title under the act of 1812, we can see no reason for excluding the surveys. Both are made after all interest in the property had passed from the government. It may be conceded that the admission of either is somewhat anomalous in principle, but it has received the sanction of the courts for so great a length of time that to call it in question now would be dangerous to the stability of important interests resting on the faith of their decisions.

There is no distinction between the title to commons and that to field lots or town lots, so far as this question is concerned. A survey of the St. Louis commons, made in 1832, twenty years after the United States had parted with all interest in the land within the survey, has uniformly been received in evidence as *prima facie* proof of the extent and boundaries, not only against the United States but all opposing claimants deriving title therefrom. This practice has received the sanction of the supreme court of the United States in several cases.

In the case of Jones, adm'r, v. Gurno, 6 Mo. 330—a case decided nearly twenty years ago — the same positions now assumed in opposition to the admissibility of this kind of testimony under the act of 1824 were taken by Mr. Geyer and

fully discussed, and, I need hardly add, with great ability. It was urged then, as now, that this evidence was *ex parte* in its character, and was not designed to, and could not, in its nature, affect private claimants, however conclusive it might be on the government, and that the United States could not invest one of their subordinate executive officers in Missouri with quasi judicial functions to pass upon the validity and fix the locality of titles which had years before entirely passed from that government, and on which it had ceased to have any control. But the court considered the matter *then* as *res adjudicata* — Judge Tompkins, indeed, further maintaining that these certificates were not merely *prima facie* but conclusive evidence upon all parties concerned. This, too, it will be observed, was in case where the certificate of confirmation given by recorder Hunt was used against a title emanating from the same act of 1812. So, in Soulard v. Allen, 18 Mo. 595, the certificate was used against a title originating under the act of 1816. The adverse titles in both cases, against which the certificates were used, had their inception and consummation prior to the act of 1824, under which the evidence was taken.

It is plain that the certificates of confirmation and surveys under the act of 1824 can avail nothing unless they are allowed to show title in 1812. They do not purport to do any thing else. They do not profess to grant land at their date or to certify that land was granted at their date, but that the confirmations were made in 1812 and by virtue of the act of 13th June of that year. They must therefore either be admitted to prove that, or go for nothing.

As the plaintiff in this case offered no evidence in rebuttal of the *prima facie* case made out by the defendant, the instructions given by the court were proper. The evidence being *prima facie*, was of course conclusive in the absence of any proof to the contrary.

The judgment is affirmed; the other judges concur.