OF

# The State of Missouri

AT THE

## OCTOBER TERM, 1879.

*(Continued from Volume 70.)*

---

PETING, *et al.*, *Appellants*, v. DE LORE.

**Common Field Lot:** ADVERSE POSSESSION. The title of a claimant of a common field lot, confirmed by the first section of the act of Congress of June 13th, 1812, was completely vested in him by said act, at its date; and title by adverse possession under the statute of limitations might begin to ripen against him from and after such date, without regard to the date of survey of his lot, the approval thereof, or of its return to the office of the recorder of land titles.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*G. M. Stewart* and *I. D. Foulon* for appellants.

*Sam. Reber* for respondents.

NORTON, J.—This is an action of ejectment instituted to recover part of a common field lot of one and a half by forty arpents, in the Common Field of Carondelet. Defendants, in their answer, deny plaintiffs' title, and set up title in themselves. The cause was submitted on the following agreed statement of facts: It is agreed, for the purposes of this case, that the land in controversy is part of a confirmation for one and a half by forty arpents, in the name of Peter La Puente's legal representatives, designated in Recorder Bates' report, referred to below, as "ancient lot in Field of Carondelet." It was a concession for one and a half by forty arpents in Prairie Catalan, granted by the Spanish Lieutenant-Governor Pedro Piernas, to Peter La Puente, 25th June, 1775, in which the land is described as being bounded on one side by L. Le May, and on the other by vacant land. It was afterward, to-wit: by the act of Congress of June 13th, 1812, presented to Recorder Bates on the 30th day of December, 1813, and evidence was taken by him and the same was included in his report, and submitted to Congress for approval 2nd day of February, 1816, as being a claim that should, in his opinion, be confirmed and surveyed according to possession. It was confirmed by the first section of the act of Congress of the 13th day of June, 1812, and afterward by act of Congress of April 29th, 1816, to Peter La Puente's legal representatives, to be surveyed according to possession. In pursuance to this confirmation a survey of the said grant was made in 1839, and was approved on the 1st day of August, 1846, and was returned to the United States Recorder on the 30th day of June, 1862, and then recorded in book F, page 182, United States Recorder's Office. Amadee Peting, one of the plaintiffs, claims under a deed duly executed to him on the —— day of ——, 1874,

by Francois Marchalles and wife, conveying all the right, title and interest of the said Marchalles and wife, as heir of Peter La Puente, to the land in question. The said Mrs. Marchalles is an heir of La Puente, was married to said Marchalles in 1845, and since that date has been continuously a *femme covert*. The other plaintiffs are the surviving descendants and legal representatives of Peter La Puente, and one of them, Josephine De Hatre, wife of Francis De Hatre, has been continuously a *femme covert* since 1861. No conveyance of the land in question, or of any interest therein, has ever been made by La Puente, or his legal representatives, save the conveyance by Marchalles and wife to Peting, above stated. No patent for the above land was ever issued by the United States Government. The land granted to Peter La Puente, and surveyed in survey 95, was a common field lot in the common fields of Carondelet, and, as such, is bounded south by common field lot granted and confirmed and surveyed to Le May's representatives by United States survey No. 95, and north by common field lot granted, confirmed and surveyed to Roy's representatives by United States survey No. 94. The defendants, and those under whom they claim, have been in the actual, exclusive and adverse possession and occupancy of the land sued for, claiming the same as their absolute property against the plaintiffs and all others, from the year 1814, continuously, until the present time, and they have made valuable improvements thereon. The circuit court gave judgment for the defendants, which, on appeal, was affirmed in the court of appeals, and the plaintiffs appealed to this court.

The only question which is presented by the facts agreed upon, is whether plaintiffs are barred by the statute of limitations from recovering the land sued for. This suit was instituted in 1875, one hundred years after the concession by the Spanish Government was made, and sixty-one years after the occupancy and adverse possession of defendants, and those under whom they claim, began.

It is insisted, however, by counsel that, notwithstanding said concession was confirmed by the 1st section of the act of Congress of the 13th day of June, 1812, and afterward by an act of Congress of April 29th, 1816, to Peter La Puente's legal representatives to be surveyed according to possession, and notwithstanding a survey of said grant was made in 1839 and approved in 1846, the statute of limitations did not begin to run against plaintiffs until such survey was returned to the recorder for record in 1862, at which last period it is claimed the title for the first time became vested in La Puente's legal representatives. The position thus assumed is overthrown by the case of *Guitard v. Stoddard*, 16 How. 494, in which it was held, that " the act of 1812 is a present operative grant of all the interest of the United States in the property described in the act, and that the right of the grantee was not dependent upon the *factum* of a survey under the Spanish Government;" that the act " makes no requisition for a concession, survey or permission to settle, cultivate or possess, or for any location by public authority, as the basis of the right, title or claim, upon which its confirmatory provisions operate." The doctrine of this case was re-affirmed in the case of *Glasgow v. Hortiz*, 1 Black 595. In the case of *Milburn v. Hardy*, 28 Mo. 514, it was held " that by the act of the 13th day of June, 1812, the United States was divested of all title to the property described in the 1st section of that act as confirmed to private claimants. The act was a grant *proprio vigore*, and the title of each claimant under it was complete at its date, and he could maintain his ejectment upon mere proof of inhabitation, cultivation or possession without any further or other evidence of title." It is, therefore, manifest that the legal representatives of La Puente could, at any time after the passage of said act, have maintained ejectment against the occupants of the land in controversy, and, as such occupancy has been adverse and continuous since 1814, a period of sixty-one years

before the institution of this suit, judgment was properly rendered for defendant. Judgment affirmed. All concur.