## IOWA COUNTY v. FOSTER ET AL.

1. **Promissory Note: EXECUTION OF NEW NOTE: MORTGAGE.** The giving of one's own note in discharge of a debt, evidenced by an existing note, is a good payment thereof, if it has been so accepted by the party entitled to receive payment, and a mortgage executed to secure such existing note will be thereby satisfied.

*Appeal from Washington District Court.*

· FRIDAY, DECEMBER 6.

THE petition of plaintiff, filed on the 8th day of January, 1877, in the first count alleges in substance that on the 10th day of February, 1853, Charles Foster executed to Martin Ballard a mortgage upon the south-east quarter of section 15, in township 77, range No. 8 west, in Washington county, to secure the sum of three hundred and seventy-five dollars, on that day borrowed of the school fund by said Foster, to become due in five years, for which sum Foster executed his promissory note, which has never been liquidated, but which has been destroyed. The petition makes A. Bunker, Frank Merrick, John Horace, M. S. Wallace, John Nejedla, S. L. Ward, H. & W. Scofield, Wesley Runnion, Samuel Price, W. R. Rickey and Lester R. Burr parties defendant, alleging that they have or claim to have a lien on or interest in the property. Judgment is asked in this count for fifteen hundred dollars, for a foreclosure of the mortgage, and a declaration that the lien of the defendants above named be declared junior and inferior to that of plaintiff.

The second count of the petition alleges that on the 3d day of February, 1854, the defendants Charles Foster, R. B. Foster and Allison Bunker executed to Martin Ballard, school fund commissioner of Iowa county, their promissory note for four hundred and eighty-seven dollars and fifty cents, due five years from date, with interest at the rate of ten per cent per annum, payable annually; that to secure the pay-

ment of this note Charles Foster and his wife, Mary B. Foster, executed to Martin Ballard a mortgage upon the lands in the first count of the petition described, which was filed for record in the office of the recorder of deeds, in Washington county, on the 8th day of February, 1861; that the note and mortgage are unpaid; that prior to the commencement of this suit Charles Foster departed this life, leaving his widow, Mary B. Foster, and his children, Irene and Ella Foster, his only heirs; that the other defendants, before named, claim a lien on or interest in the property, but that whatever interest they have is inferior to that of plaintiff. Judgment is asked in this count for two thousand dollars, with foreclosure, etc.

The several defendants, who claim to own portions of the land in controversy, each filed a separate answer, alleging that the mortgage executed in 1853 had been paid in full; that the second mortgage, executed February 3, 1854, was not placed upon record in the county where the land is situated until long after he or his grantors acquired title to a portion of the land, without knowledge of the existence of the mortgage, and that plaintiff's claim is stale and ought not to be enforced. The defendants also set up substantially the same matters in a cross-petition, and asked the cancellation of the mortgages and the quieting of their titles. The court rendered judgment upon the last note for two thousand nine hundred and fifty-three dollars and thirty-four cents against the defendants R. B. Foster and Allison Bunker, and decreed that the equity of redemption of the defendants in the south-west quarter of the south-west quarter of the south-east quarter in controversy, containing ten acres, and in one acre off the west side of the north-east quarter of the south-west quarter of the south-east quarter in controversy, be barred and foreclosed, and that a special execution issue for the sale thereof, and that in all other respects the petition of plaintiff be dismissed.

Upon the cross-petition of the several defendants the court decreed that their several titles, except as above decreed, be

quieted, and freed and released from all liens claimed or held by plaintiff.   The plaintiff appeals.

*Mackey, Harned & Fonda,* for appellant.

*H. & W. Scofield,* for appellees.

DAY, J.—I.  It is claimed by defendants that the three hundred and seventy-five dollar note secured by the mort-

1. PROMISSORY note: execution of new note.

gage of 1853 has been paid.   The defendant introduced as a witness one G. S. Nutterfee, who testified that he was present at Ballard's, in Iowa county, sometime in the winter of 1854, when the three hundred and seventy-five dollar note was paid in cash by Foster, and the note lifted and destroyed, and Ballard agreed that the mortgage should be cancelled as soon as he could have access to the books.   Ballard, the school fund commissioner, who transacted the business in question, testified as follows : "My best recollection is that in February, 1854, as school fund commissioner, I sold Foster some school land, and in order to enable him to make first payment I made another loan to him of four hundred and eighty-seven dollars and fifty cents, which loan included the loan of three hundred and seventy-five dollars. The first payment on the land purchased was one hundred and ten dollars.   There was about two dollars and fifty cents expenses in making the loan that I paid myself, which was added to the amount then loaned, making the amount of four hundred and eighty-seven dollars and fifty cents.   The note and mortgage for three hundred and seventy-five dollars were then given up to Foster, and a new note and mortgage taken for the four hundred and eighty-seven dollars and fifty cents." In his cross-examination this witness testified as follows : "Did you not regard and treat the note made in 1853 as paid ? I did.   Was it not your understanding at the time of the surrender and giving up or destruction of the 1853 note and mortgage that neither the note nor mortgage were of any further validity ? Did you not give Foster and others then

Iowa County v. Foster.

present thus to understand? My understanding was, when the loan of 1853 was merged into the loan of 1854, that the note and mortgage of 1853 were of no validity, and it may be that I gave those present so to understand."

In his second deposition Ballard says: "At the time I made the loan to Charles Foster of four hundred and eighty-seven dollars and fifty cents, which loan included the loan of three hundred and seventy-five dollars, I charged myself in the school fund books: 'To cash in full, Charles Foster loan, three hundred and seventy-five dollars.' I did regard the three hundred and seventy-five dollar mortgage of no validity. I did agree with Foster that I would cancel this mortgage on the records of Washington county. I regarded the mortgage of no validity, for the reason that I supposed the loan of four hundred and eighty-seven dollars and fifty cents would be paid. At the time I lived some forty miles from Washington, and prior to that time I frequently had business there, and waited expecting some business matters in connection with the cancelling of this mortgage would call me there. Another reason was that Foster had told me he had concluded not to sell the land, as it would pay him as well to keep it as any one else. I desired him to keep the land, still, if I had gone to Washington, after making the four hundred and eighty-seven dollar and fifty cent loan, the mortgage to secure the three hundred and seventy-five dollar loan would have been cancelled." From the recitals in the 1853 mortgage it does not seem that there were any sureties upon the three hundred and seventy-five dollar note. The four hundred and eighty-seven dollar and fifty cent note has two sureties. Intermediate the execution of the first and the second mortgage no liens had attached to the mortgaged property. The arrangement was entered into with full knowledge of all the facts.

Accepting even the testimony of Ballard as correct, we think the three hundred and seventy-five dollar note must be regarded as paid. The giving of one's own note, in discharge

of an existing debt, is a good payment, if it has been so accepted by the party entitled to receive payment. *Hardin v. Branner*, 25 Iowa, 364 (370); *Sloan v. Rice*, 41 Iowa, 465. See, also, *Taft v. Boyd*, 13 Allen, 84; *Hawkes v. Dodge County Mutual Ins. Co.*, 11 Wis., 188; *Curtis v. Ingham*, 2 Vt., 287.

The evidence is quite satisfactory, even upon Ballard's acount of the transaction, that the second note and mortgage were intended, and were accepted, as payment of the first. We must, from the testimony, regard the first note as paid, and the mortgage securing it as satisfied.

II.   This leaves for consideration only the second mortgage, securing the second note for four hundred and eighty-seven dollars and fifty cents.   This mortgage was not filed for record in the county where the land is situated until February 8, 1861.   Prior to this time the defendants and their several grantors acquired title to the respective portions of the land which they claim, without any knowledge of the existence of this mortgage.   Their titles must, therefore, be protected.   The judgment of the court below is

AFFIRMED.