72  441
63a  446

## GLASGOW v. BAKER *et al.*, *Appellants.*

**No Estoppel in Favor of Strangers.** Where there are conflicting surveys of an ancient lot now divided into several parcels, and the parties claiming one of the parcels enter into a partition of it among themselves according to the metes and bounds fixed by one of the surveys, this will not be such an acceptance of that survey as will conclude these parties from asserting the correctness of the other in an action between them and a stranger to the deed, involving title to one of the other parcels.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This was an action of ejectment. Plaintiffs sued on behalf of the public schools, claiming the land in dispute as part of school section 16, township 47 north, range 7 east, of the 5th principal meridian, under the act of Congress of March 6th, 1820, admitting the State into the Union. The land was admitted to lie within the limits of said section, but defendants claimed it by virtue of a title older than that under which the claim was made for the

schools, viz : as part of certain common field lots the title
to which was confirmed by the act of June 13th, 1812, in
parties from whom defendants derived it. It appeared in
evidence that there had been two surveys of these lots
made by order of the Surveyor General of the United
States, one in 1855, the other in 1857. By the first of these
the land in dispute was shown to be part of these lots ; by
the other a part of it was shown to lie outside of them.
In 1867 defendants entered into a deed of partition, among
themselves, of other lands adjoining the land in dispute, in
which deed they recited and referred to the survey of 1857,
as the true survey, and undertook to divide among them-
selves as part of said lots lands which were no part of said
lots according to the survey of 1855, but were part of them
according to that of 1857. Plaintiffs were not parties to
this deed. The other facts, together with the instructions
given in the case, will be found fully stated in the report
of this case in volume 50 of these reports, page 60.

*Britton A. Hill* and *R. E. Collins* for appellants.

*Samuel T. Glover, Alexander Hamilton, Melville L. Gray*
and *John D. S. Dryden* for respondents.

The defendants in their agreement for partition of
Lindell's estate, appointed commissioners to make parti-
tion, and authorized them to have surveys and plats made,
and make partition among them, and they agreed to make
deeds among themselves according to the allotments made
by the commissioners. The plat of Lindell's 2nd addition
accompanying the report of said commissioners located the
surveys of Bouis, Baccannet and Bizette according to the
United States surveys of 1857, nine arpens and thirty-six
French feet to the westward of the general east line of
the Grand Prairie common fields, and the heirs, in accord-
ance with said location, made deeds among themselves.
Further, the patent from the United States to Hunot's legal
representatives, who was Peter Lindell, was received and

recorded by the representatives of Lindell, and located Bouis, Bacannet and Bizette to the westward nine arpents and thirty-six French feet, and they accepted said patent, and claimed under it and conveyed the land granted by it, reciting the survey of Bizette of 1857. All this is the highest evidence of an acceptance by defendants of said surveys, and is conclusive on them. *Carondelet v. McPherson*, 20 Mo. 192 ; *Menard v. Massey*, 8 How. 313. If these surveys were erroneous, defendants had the right to waive the error and did waive it.

NAPTON J.—This is the same case before this court in 1872, *Glasgow v. Lindell's heirs*, 50 Mo. 60. The suit was commenced in 1853, and resulted in May 1870, in a verdict and judgment for plaintiffs in the Circuit Court for 35.076 acres, but this judgment was reversed by the general term of said court, and this reversal was sustained by this court ; but the case was remanded to the special term for further proceedings. The appeal now is from the result of this new trial.

The evidence for the plaintiff on the second trial was precisely the same as that on the first trial, which is stated in detail in the opinion of this court in 50 Mo. 60. The right of the commissioners to maintain the action was sustained in that case, but the instructions given, as they excluded from the jury the consideration of the question whether the lot in controversy was a common field lot, and therefore confirmed by the act of 1812, were held erroneous, and the opinion of the court was that there was sufficient evidence to authorize this question to be left to the jury. It was further determined, that the instructions offered by the defendants in that case, the Lindell heirs, should have been given so far as they enunciated the proposition that each inhabitant of the town of St. Louis, cultivating or possessing a common field lot prior to the 20th of December, 1803, was confirmed in his title to such lot by the act of 1812, and whether owned by defendant or

not, such cultivation and possession was a bar to plaintiff's title under the 16th section, originating in 1820. It was further held in that case that the partition between the heirs of Peter Lindell in 1867, was no estoppel to a claim to land not embraced in that deed.

When the case was last tried, the court gave numerous instructions at the instance of the parties, besides several of its own motion, among which was the following: A United States survey of a common field lot in the common fields adjacent to the town or city of St. Louis, claimed under the act of Congress of 13th of June, 1812, is no evidence of title being vested in such claimant to the common field lot therein designated, but if assented to by such claimant may be considered by the jury as determining the location and boundary of such common field lot as between such claimant and the United States, as of the date of the approval of said survey by the Surveyor General of the United States. In case of a conflict between two or more United States surveys of such common field lot, the earlier survey, if assented to by such claimant would be binding on the United States or those claiming through said United States by title emanating after the 13th of June, 1812. But a subsequent survey made by the United States of such common field lot, changing its location, if assented to by said claimant, would be binding on such claimant as against said United States, or those claiming by title emanating therefrom, prior to the approval of such subsequent survey by the Surveyor General of the United States.

In the multiplicity of instructions given the jury on each side, with separate instructions given by the court upon its own suggestion, it is probable that the instructions of the court were considered as controlling. The controversy is one between the 16th section and the common field lots, and the only difficulty can be in ascertaining the limits of the common field lots, as they existed before 1803. No pretension is made that the 16th section

could interfere with the common field lots confirmed by the act of 1812, since that act disposed of them all, and the weakness of defendant's title is of no consequence, if it is clearly established that the land in controversy was a part of the common fields of St. Louis, as known in Spanish times. It is true that portions of the common fields may have been abandoned by those who cultivated them, and indeed I infer from our decisions in early times that all cultivation in these lots had ceased in 1797, or fifteen years before the passing of the act of 1812. The abandoned lots would under the act of 1812 go to the schools, and the plaintiffs have no rights on this ground, and as to such vacancies as sink holes or something of that sort would have made on a prairie, since they would go to the government for military purposes, it is of no consequence in this case.

The material and controlling question was, therefore, whether the land was within the limits of the common field lots, for if it was, it was plain that the 16th section could not interfere with such title. The real difficulty is, therefore, that there were two surveys of these lots. It has always been recognized by our court, that although the United States had by the act of 1812 parted with all interest in the land designated in that law, yet the survey made by her authorities subsequently would at least bind the United States and those who accepted it—but in this case there were two surveys. The first was made by Cozens, in 1855, which threw the land in controversy within the common field lots; the second was made upon an order to place these lots nine arpens west of where they had been located. This last survey, is, in a word, the only real controversy in the case. If that survey bound the defendants, representing the Lindells, they have no case. When this case was here before, 50 Mo. 82, it was strongly intimated by Judge Adams, that the doctrine of estoppel had no application to such a case, and if that is adhered to, and the survey of 1857 is held not binding on the Lin-

dells, it is clear that this judgment against them should be reversed. The instructions given by the court, though cautiously worded, certainly were intended to indicate to the jury that they should be governed by the last survey— in other words, that the Lindells in accepting that survey, which was advantageous to them upon other claims which they had, could not be heard now to dispute it. But it was held, when the case was here before, that the claim now advanced by the Lindells or their representatives, had no connection whatever with that upon which the survey of 1857 was made, and consequently there was no estoppel—nothing to hinder them from disputing this last survey of Cozens. The instruction given by the court presents a different doctrine, declaring substantially that the last survey if accepted by the Lindells, though in regard to another claim, was binding on them. The judgment must therefore be reversed and the case remanded. The other judges concur.