WILLIAM GLASGOW JR., Respondent, *v.* LEVIN H. BAKER ET AL., Appellants.

### July 3, 1883.

1. COMMON FIELD LOTS — OCCUPATION UNDER ACT OF 1812. — The act of congress of June 13, 1812, is not a mere reservation of land from future disposition, but is a grant of the lands within its descriptive terms to the persons designated.

2. —— EVIDENCE. — In order to make out a title under this act it must be shown, not only that the lot was cultivated prior to December 20, 1803, but by whom the particular common-field lot was so occupied and cultivated.

3. —— EJECTMENT — OUTSTANDING TITLE. — An outstanding title in a third person, set up as a bar to recovery in ejectment must be such a one as the owner thereof could recover on were he the plaintiff in ejectment.

4. —— The owner of an outstanding title set up as a bar in ejectment must be so identified as to enable the adverse party to dispute his title by proof of abandonment or incapacity to hold title.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed.*

BRITTON A. HILL and ROBERT E. COLLINS, for the appellants : The common fields were a connected and continuous series of lots, *en masse*, surrounded by a common fence. — *Page v. Scheibel*, 11 Mo. 187 ; *Glasgow v. Hortez*, 1 Black, 595. If the whole of the township was granted or disposed

of by said act of congress, the plaintiff can not recover in this action. — *Glasgow* v. *Hortez*, 1 Black, 595 ; 2 How. 345, 375 ; *Glasgow* v. *Lindell's Heirs*, 50 Mo. 70, 81 ; *Glasgow* v· *Lindell's Heirs*, 72 Mo. 443. All of this township was granted and disposed of on the 13th of June, 1812, by the first and second sections of said act of congress. — *Glasgow* v. *Baker*, 72 Mo. 81, and cases cited.

M. L. Gray, S. T. Glover, and John D. S. Dryden, for the respondent : The plaintiff is entitled to maintain this suit. — Act of March 3, 1851 (Sess. Laws of 1851, p. 706) ; *Glasgow* v. *Baker*, 50 Mo. 78 ; *s. c.* 72 Mo. 443. If the United States government was the owner of the land in dispute at the time the act of 6th of March, 1820, took effect, that act in connection with the ordinance of the convention of 19th of July, 1820 had the effect to vest the title to the same in the state of Missouri. — *Payne* v. *St. Louis County*, 8 Mo. 476 ; *Kennett* v. *Cole County*, 13 Mo. 139 ; *The State* v. *Dent*, 18 Mo. 313 ; *The State* v. *Ham*, 19 *Id.* 592 ; *s. c.* 18 How. 126. The case as made by the evidence is insufficient to sustain the defence of outstanding title. — *McDonald* v. *Schneider*, 27 Mo. 402 ; *Greenleaf's Lessee* v. *Birth*, 6 Pet. 312 ; *Peck.* v. *Carmichael*, 9 Yerg. 325 ; *Vasquez* v. *Ewing*, 42 Mo. 256 – 258. There is no such thing as a confirmation under the act of June 13, 1812, *en masse*, but only to known and ascertained persons, and of a definite and ascertained lot. — *Hammond* v. *Coleman*, 4 Mo. App. 315 ; *Guitard* v. *Stoddard;* 16 How. 493 ; *Glasgow* v. *Hortez*, 1 Black, 593 ; *Page* v. *Scheibel*, 11 Mo. 167 ; *Gamache* v. *Piquignot*, 17 Mo. 310 ; *Papin* v. *Hines*, 23 Mo. 277. The mere fact that the land in dispute lay within the exterior limits of the common fields of the Grand Prairie of St. Louis was no obstacle to the plaintiff's title attaching under the act of congress of the 6th of March, 1820, provided the disputed premises were at that time vacant land. — *Hammond* v. *Schools*, 8 Mo. 65 ; *Eberle* v. *Schools*, 11 *Id.* 247 ; *The State* v. *Ham*, 19 Mo. 592.

LEWIS, P. J., delivered the opinion of the court.

This ejectment suit has been pending ever since the year 1853, and has been twice passed upon by our supreme court. 50 Mo. 60 ; 72 Mo. 441. The plaintiff is the last surviving commissioner of three who were appointed under an act of the general assembly, approved March 3, 1851, to take possession of section 16, in township 45, north of range 7. east, and to sell the same, etc. Sess. Acts 1851, p. 706. The state's title under which this authority was given dates from the act of congress of March 6, 1820, admitting Missouri into the Union, and the ordinance of acceptance of July 19, 1820. This title was sustained by the circuit court, in a judgment from which the defendants have appealed.

The defendants hold. that the state acquired no title to the land in controversy because, although within the sixteenth section, as granted in the act of 1820, the same land had been previously granted and confirmed to private persons by virtue of the act of congress of June 13, 1812, with the fact of occupancy and cultivation by such persons prior to December 20, 1803. The land appears to be within the boundaries of the Grand Prairie common field. The defendants undertook to show that it included the several lots of one or more by forty arpens within the common field, which were formerly occupied and cultivated respectively, by Bonis, Bacanne, Laroche, and Bizet. The trial court found against the defence presented in this form, upon issues of fact relating to boundaries and location. As the record now stands, the defence seems to be narrowed down to a general proposition, which is the only one we deem it necessary here to consider.

There was testimony tending to show that, prior to December 20, 1803, the Grand Prairie common field was composed of a connected series of long and narrow lots, adjoining each other on their longest sides, and bounded

at their ends on a continuous line, whose general direction was north and south. That all these lots were cultivated by inhabitants of St. Louis, some having one, and others two or more, each occupant holding his specific parcel separate from the others. As already mentioned it was shown and admitted that the land in dispute lies within the outer lines of the Grand Prairie common field, while it is also within the lines of surveys under the acts of congress. It is contended for the defendants that, as a proposition of law, these facts are sufficient to establish an outstanding title which will defeat the plaintiff's claim, without any proof or identification of the particular lots which the land covers, or of the person or persons who occupied or cultivated them prior to December 20, 1803.

To my mind, this proposition is at war with the ancient and familiar exactions of certainty in legal procedure which have always been considered as fundamental and indispensable. It seems to negative the axiomatic rule, that there can not exist a grant without a grantee.

. It must be observed that the act of June 13, 1812, is not a mere reservation of lands from future disposition by the government. The courts have always held that it is a direct and operative grant of the lands, within its descriptive terms, to the persons respectively, whom it designates. As to any particular lot, therefore, and any person supposed to be a beneficiary of the act, if there be lacking in the relations between them any element that is essential to the constitution of a grant, it can not be found that they are within the effective operation of the act.

The reasoning which holds that, because a particular effect of the act of 1812 has been to withhold from later disposal large bodies of land within certain boundaries, therefore the act itself is to be treated as an expressed reservation of the lands found within those boundaries, is fallacious in the

extreme. It confounds an effect with the cause which induced it, or, rather it makes an effect do duty as the cause of itself. The act of 1812 uses no language of reservation in this connection. If its operation practically excepts any part of a sixteenth section from the general donation contained in the act of 1820, this is solely because such part has already been " otherwise disposed of" in the legislative grant to a cultivator or possessor who was such before December 20, 1803. The reservation, if so it must be called, first appears as a logical result of the actual grant. The *grant*, therefore, is the first thing to be proved. But the reasoning to which we demur assumes first of all a reservation in general terms, and then argues, that since there *is* a reservation, *therefore* there must have been a cultivator or possessor, to whom the lot was granted by the act of 1812 ; *therefore*, there need be no more specific proof of the fact ; *therefore*, the lot was reserved, and did not pass by the act of 1820. This is arguing in a circle. It would prove that, while the reservation owes its existence to the grant, the grant, at the same time, owes its existence to the reservation. Such a confusion of ideas must invariably result from every attempt to show that a sixteenth section title, derived from the act of 1820, can be defeated by operation of the act of 1812, without the legal, customary, and specific proofs of a known grantee, under the latter, by virtue of inhabitation and possession before December 20, 1803. Further: it is a well established principle that an outstanding title in a third person, set up as a bar to recovery in an action of ejectment, must be such a one as the owner of that title himself could recover on, if he were asserting it in an action. It must be a present, subsisting, and operative title. *McDonald* v. *Schneider*, 27 Mo. 405. Such a title is always susceptible of direct proof, and will never be recognized upon the faith of anything less. Can there be a direct proof of title, which fails to identify the holder? Legal identification may exist in description of the

person as well as in the name. "The children of A," are descriptive words which separate the persons intended from all the rest of the world. But "The man who crossed on the bridge last Saturday," is an expression far too remote, since hundreds may have done the same act. All the books agree that a grant to "A. or B. " is absolutely void. Why? It may be certain that both A. and B. are well known human entities, capable of receiving; that the grantor can at any time testify which of the two, or whether it was both, he meant to favor; and that A. and B. can at once remove all doubt, by agreeing between themselves which shall yield, or that there shall be a joint enjoyment. But for the simple reason that the law, through its courts, can not *for itself* perceive and determine who is the real grantee, the intended grant is declared a nullity. Again: a grant to the inhabitants of an unincorporated town and their successors in inhabitation, may vest a life estate in the present inhabitants, but is void as to the successors. *Thomas* v. *Marshfield*, 10 Pick. 364; *Hornbeck* v. *Westbrook*, 9 Johns. 73. The future inhabitants may be identified beyond all question, from the moment of their settlement and whenever they propose to claim the benefit of the grant. But no human perception can fix their individuality at the time when the grant is executed. Hence, there is no grant in the eye of the law.

From these distinctions it seems clearly to result that the law will recognize no grant where the individuality of the grantee is either not fixed, or is incapable of being fixed. If it is capable of being fixed, this must be done to satisfy a familiar rule, by the best evidence that the nature of the case will admit, as this rule is understood in established usage. Open physical facts which are inseparable from the thing to be proved, and without which its existence can not legally be recognized, must always distinctly appear.

How then, consistently with these requirements, must we

satisfy a court of justice that the United States, by the act of June 13, 1812 has executed a valid and effectual grant of a specific lot of land? Must we not first of all identify the grantee, and fix his individuality, either by his name or by a personal description, which will set him apart from all others? Proof that the lots here in question were cultivated by *somebody* before December 20, 1803, with nothing more, seems to stop far short of the certainty requisite to create a grant. It admits of a hypothesis that they were cultivated by dozens of persons, that some of these were never claimants, and that others abandoned their claims, if any they had; or that those who claimed and cultivated died without heirs before June 13, 1812, or were alien enemies. In these events, or any of them, there could be no grant. And yet the party claiming adversely will be absolutely cut off from either pleading or proving any one of these conditions, by the fact that no person is named or described, upon whom he might fix them. It is abhorrent to every system of enlightened jurisprudence that either pleadings or proofs, while on their face conclusive against the adversary, shall yet be so vague and indefinite, that he can not possibly strike at them, for want of a visible point of attack. To admit the defendants' doctrine in the present case, would be to cut the plaintiff off from a legitimate line of defence against the alleged outstanding title, which would be fairly open to him, if properly advised who were the supposed grantees, by name or description, under the act of 1812. The plaintiff can not be called upon to identify them, since he would first have to prove, and then to disprove their alleged character. Finally, it may be said without the least fear of contradiction, that no adjudicated case can be found, in which an outstanding title was sustained against a plaintiff in ejectment without a clear and satisfactory showing of who was the holder of such outstanding title.

Counsel say that these conclusions are opposed by two

decisions of the supreme court. We do not so understand the decisions. In neither of them is the question we have been discussing presented or considered. It requires a strained construction to discern, even in the *dicta* of the opinions, a conscious reference to the point upon which this case now turns. In the first decision ( *Glasgow* v. *Lindell*, 50 Mo. 60), the point settled, which comes nearest to the matter in hand, was that evidence of cultivation and possession, under the act of 1812, was sufficient, without direct proof that the possessor had also " claimed " the land. It is further recognized as the settled law, that the act by its own terms vested in each inhabitant of St. Louis the lot cultivated by him as conditioned, and that no survey was necessary to complete the title. A single remark made in that connection goes far to overturn the defendant's present theory. Judge Adams said, of the common field lot confirmed under the act of 1812, that " it either exists upon the ground, by defined limits, or it has no existence at all." How, then, can the defendant here claim to have shown such a confirmation, upon a theory which repudiates all need of establishing the " defined limits of any lot which is supposed to interfere with the plaintiff's claim?" One or more of the defendant's instructions, which had been refused on that occasion, were substantially reproduced, and again refused, at the last trial. Judge Adams remarked, in his opinion: "In regard to the instructions prayed for by the defendants and refused by the court, I can see no substantial objections to them except to the two instructions marked A. and E." Even if the instructions were still free from objection it would not necessarily follow that the judgment must be reversed because they were refused. They must be considered, as to the first trial, with reference to the form of defence which was then being urged, and the plaintiff's objections thereto, which were overruled by the court. They

formed part of a series, which taken together, presented the specific questions to which the attention of the court was directed. The matter of inquiry is clearly shown in the language of the opinion : " The objection that the defendant's instructions embraced confirmations *en masse* is a criticism upon the language of the instructions, rather than a substantial objection. The instructions, in my opinion, do not bear that construction. They were intended to enunciate the proposition that each inhabitant of the town of St. Louis, cultivating or possessing a common field lot prior to the 20th of December, 1803, was confirmed in his title to such lot by the act of congress of the 13th of June, 1812. The defendants had a right in their defence to invoke these outstanding titles to defeat the plaintiff's action. The titles so emanating by act of congress of the 13th of June, 1812, or emanating by act of congress of April, 1816, were older and better titles than the title of the state to section sixteen, which was granted in 1820." All this is undoubtedly true, and is perfectly consistent with the views contained in the present opinion. While upholding, as we do, the efficacy of the common field lot confirmation, Judge Adams makes no reference to the method of proving it, other than in his allusion to " confirmations *en masse*." He answers objections by saying that the instructions do not mean to sustain such wholesale confirmations. This seems to be a pretty strong intimation that, if the instructions did sustain them, they would be erroneous ; and that is precisely what we here hold. In the last trial, the defendant's instructions were so framed as to assume that the field lot confirmation, in any instance, might be *sufficiently proved*, by showing the so-called confirmation *en masse* of all the lots in the Grand Prairie. We hold, simply, that such a mode of proof is insufficient. Judge Adams, when fairly understood, seems to have been of the same opinion.

In the second decision ( *Glasgow* v. *Baker*, 72 Mo. 441 ), the question determined was as to the effect of a survey in partition, in creating an estoppel against the parties, in favor of a stranger to the proceeding.   Judge Napton, delivering the opinion, remarks upon the common understanding as resulting from numerous judicial investigations, that all the lots, in the common fields were cultivated by some persons who thereby got the benefit of the act of 1812 in a confirmation to themselves.   He treats the subject in general terms, and says nothing, as he has no occasion to say any thing, about the requisite particulars of legal proof in a judicial proceeding, upon an issue raised as to the fact of cultivation and consequent confirmation of a particular lot. It does not appear that the sufficiency of technical proof, as here insisted on for the defendants, was at all in the mind of the court.   It is as if a certain corporate body had figured in ninety-nine different suits, in every one of which its character as a corporation was distinctly proved. A court might well, in such a case, remark upon the well known and familiar fact that the body had been duly incorporated.   And yet no one will deny that, in the hundredth case, upon the raising of such an issue between new parties, it would be quite as necessary as ever before, to prove the fact of incorporation by competent and lawful testimony.

We require nothing more than the application of a similar rule  to the present case, and do not think that this is denied by any ruling of our supreme court.   The judgment of the circuit court will be affirmed.   Judge BAKEWELL concurs.   Judge THOMPSON files a dissenting opinion.

Dissenting opinion by THOMPSON, J.

I can not agree to the opinion of the court in this case, for the reasons stated in my opinion in *Cummings* v. *Jamison* (No. 2095 ).   My understanding of the decisions of the

supreme court, in the two former appeals of this case
(50 Mo. 60 ; 72 *Mo.* 441), as applied to the facts then and now
in evidence is that the Grand Prairie common fields of St.
Louis was *one* field, under one enclosure, though owned
and cultivated in severalty by various persons; that the
effect of the act of 1812, was to recognize and confirm the
title of these various occupiers and cultivators, as they ex-
isted on the 20th day of December, 1803, and to withdraw
this entire field from future disposition as a part of the pub-
lic domain; that the effect of this act was to *dispose of* all
the lands within the boundaries of this one field, within the
terms of the act of 1820, which granted the sixteenth sec-
tion in every township to the state of Missouri for the use
of public schools; that as the effect of the act of 1812 was
to remove the entire body of land known as the Grand Prai-
rie common fields from disposition thereafter as a part of the
public domain, the plaintiffs took nothing by virtue of the
act of 1820, within the out boundary line of those fields.
To my mind it makes no difference that some of the
ancient occupiers of those fields or their heirs have never
appeared to claim the lands which belonged to them and
which were confirmed to them by the act of 1812. To my
mind the question does not stand so much upon the doctrine
of outstanding title as upon the ground that nothing
was ever granted to these plaintiffs within the boundary
line of these common fields. I have the satisfaction of
knowing that if I have misunderstood the decisions of the
supreme court, that tribunal may have the opportunity,
upon an appeal from the decision of this court, of saying
what it really did mean. The rule which I deduce from
those decisions is commended by strong reasons of pub-
lic policy. It saves the rights of occupiers who, by
themselves and those through whom they claim, have held
these lands for two or three generations.