Henry J. Curtis, Respondent, v. Wm. H. Browne and Esther V. Sweeney Browne, Appellants.

Kansas City Court of Appeals, November 18, 1895.

1. Bills and Notes: INTENTION. Payment, or something done and accepted as payment, can alone discharge an obligation. The intention to accept anything else than payment as satisfaction must appear.

2. ———: PAYMENT: INTENTION. On the evidence in this case it is *held* that the making and delivery of the second note and mortgage, in which the description of the land was corrected and a vendor's lien declared, together with the return of the first note indorsed in blank with the mortgage, to the maker, was intended as satisfaction of the first note, which, between the parties, was canceled.

3. ———: BONA FIDE HOLDER: SALE UNDER TRUST DEED. Where a second note and mortgage are made in discharge of the first note and mortgage, and the first note, through the maker thereof or his agents, gets into circulation and into the hands of a *bona fide* holder for value before maturity, the sale under the first mortgage carries the title as against the second mortgage and the holder thereof.

4. ———: MORTGAGES: SATISFACTION. Where the maker of a note indorsed in blank by the payee delivers the note to a third person to have the payee release the mortgage, such third person has the right to mark the mortgage satisfied on the margin of the record.

5. ———: ———: RELEASE. Where the payee of two notes, the second made in discharge of the first, indorses the first in blank and returns it to the maker and transfers the title to the second, it is out of his power to release either of the mortgages securing such notes; and especially as to *bona fide* purchasers thereof.

6. **Deceit**: WRONGFUL SALE OF NOTE: DAMAGES. Where the maker of a first note, indorsed in blank by the payee, places the same in the hands of a third person to secure a release from the payee, and such third person with fraudulent intent sells said note for valuable consideration to a *bona fide* holder, who forecloses the mortgage securing the same and takes the title to the mortgaged premises to the injury of the *bona fide* holder of a second note made in satisfaction of the first note, such third person is liable in damages to the holder of said second note.

7. ——: ——: ESTOPPEL BY DEED. Estoppels by deed will not avail in favor of any but parties and their privies in blood, in law and estate; and this action is not based on the release but is a collateral action; and estoppel called into being for the prevention of fraud, will be suppressed when fraud will be produced by its allowance.

8. **Trial Practice**: INSTRUCTIONS: JURY QUESTION. The intention of the parties in making second deed of trust in this case was a question for the jury; and this case is reversed because that and other questions were taken from the jury by peremptory instructions.

*Appeal from the Jackson Circuit Court.*—HON. CHAS. L. DOBSON, Judge.

REVERSED AND REMANDED.

*George F. Ballingal* and *M. T. C. Williams* for appellants.

(1) The petition in this case fails to state any cause of action. *Walters v. Walters,* 73 Ind. 425; *Hill v. Beebe,* 13 N. Y. 556; *Packard v. Kingman,* 11 Iowa, 219; *Boyd v. Beck,* 29 Ala. 703; *Pouderd v. Ritzinger,* 122 Ind. 571. (2) Under the agreement of the parties alleged in the petition the issue of the original note by Fitzmaurice before maturity would not revive or continue the lien of the first deed of trust, and plaintiff could not be legally injured by the reissue of that note. 1 Jones on Mortgages [4 Ed.], secs. 888 and 889 and cases; 2 Washburn on Real Property [5 Ed.], pp. 196, 197, and cases cited; *Hill v. Hall,* 4 Robinson (La.), 416; *Dana v. Binney,* 7 Vt. 701, 502.; *Murphy v.*

*Simpson*, 42 Mo. App. 654, 659, and cases cited; *Mc-Nair v. Picotte*, 33 Mo. 57. (3) The original note was indorsed in blank to Fitzmaurice and the deed of trust left unsatisfied of record. Under these undisputed facts, without an express agreement to the contrary, the taking of the new note and deed of trust in substitution of the old note and deed of trust, was not an extinguishment of the lien of the first deed of trust. *Lippold v. Held*, 58 Mo. 213, and cases cited; *Christian v. Newberry*, 61 Mo. 446; 2 Jones on Mortgages [2 Ed.], secs. 924 and 926, and cases cited; 2 Washburn on Real Property [5 Ed.], p. 197, and case cited; 15 Am. and Eng. Encyclopedia of Law, pp. 869 and 871, and case cited; *Sloan v. Rice*, 41 Iowa, 465; cases cited to point 1, *supra*. (4) The note of $500 of November 11, 1886, from Fitzmaurice to Judge, secured by the first deed of trust, indorsed in blank by Judge, and transferred to defendants before maturity, being negotiable in form, the transfer of the note carried with it the security of the deed of trust; and if defendants received said note for value, and without actual notice that the same had been canceled, by the execution of the second note and deed of trust, then the first note and deed of trust were valid securities as a first lien in the hands of defendant, and plaintiff is not entitled to recover. *Logan v. Smith*, 62 Mo. 455; *Hamilton v. Marks*, 63 Mo. 178; *Hagerman v. Sutton*, 91 Mo. 531, 532; *Mayes v. Robinson*, 93 Mo. 122; *Patterson v. Booth*, 103 Mo. 414, 417; *Jennings v. Todd*, 118 Mo. 303, 304, and cases cited. There was nothing on the record of the two deeds of trust or on the face of the two notes to show that they related to the same transaction; and there was no evidence on the trial showing or tending to show, that defendants had any knowledge that the second note and deed of trust were made in

substitution and cancellation of the first note and deed of trust. On the contrary, the evidence shows that they did not have any such knowledge, at the time of the transfer of the first note to them. They must, therefore, be regarded as *bona fide* holders of said note without notice of the cancellation of the same or of the substitution of the second note therefor. The facts that the note was in the hands of Fitzmaurice before maturity and indorsed by the payee in blank, do not raise the presumption or charge defendants with knowledge that it had been paid, canceled or discharged. *Eckert v. Cameron*, 43 Pa. 120; s. c., 2 Am. Law Register (U. S.), 49, and notes; *Meshler v. Reed*, 76 Pa. 76; 1 Daniel on Negotiable Instruments [3 Ed.], sec. 781, (6) and note 1; *Erwin v. Shaffer*, 9 Ohio, 43; 1 Sund. Damages, 397; 3 Rand. Com. Paper, section 1425. (5) The record of the first deed of trust remaining unsatisfied was notice to purchasers of the second note that the first note was outstanding and the first deed of trust unextinguished. *Vanice v. Bergin*, 16 Iowa, 573. And the first note being negotiable in form and indorsed by Judge in blank, its transfer by Fitzmaurice to defendants, is binding on Judge and the holders of the second note through him. *Jordan v. Furlong*, 19 Ohio St. 89. (6) Shoff and Bentley, by their deeds of purchase, assumed and agreed to pay as a part of the purchase money the first and second notes. This estopped them from denying the validity of the incumbrances. And plaintiff purchasing from them by quitclaim stands in their shoes, and is also estopped from denying the validity of the first incumbrance. *Stoutimore v. Clark*, 70 Mo. 478; *Hazenritter v. Kuchoffer*, 79 Mo. 239; *Joeckel v. Easton*, 11 Mo. 124; *Broadwell v. Merritt*, 87 Mo. 95; *Kellogg v. Ames*, 41 N. Y. 264.

Curtis v. Browne.

*Charles F. Mussey* and *William O. Mussey*, for respondent.

(1) The petition states a good cause of action. A negotiable instrument may be discharged and settled between the parties, and those having notice by the delivery of the instrument for a consideration, with the understanding and agreement between the parties that it is to be considered discharged and canceled without any marks of cancellation appearing on the face of the note. Such a discharge and settlement of the note carries with it a release and discharge of the lien of the deed of trust, as far as the parties to the paper and holders with notice are concerned. Tiedeman on Com. Paper, sec. 40; Tiedeman on Com. Paper, sec. 305, at p. 533, and cases cited; Jones on Mortgages, secs. 979, 889. See *Snell v. Palmer*, 14 Ill. App. 337; *Porter v. Mueller*, 3 W. Court. Rep. 619. (2) If, however, such a negotiable instrument come into the possession of a *bona fide* purchaser, for value without notice, it is not void, but is a valid instrument, binding the parties to it and carrying a lien upon the security which may be uncanceled of record. Equitable defenses to negotiable instruments can not be made against *bona fide* holders for value without notice and before maturity. Tiedeman on Com. Paper, sec. 305, at page 533, and cases cited. *Savings Institution v. Heinsman*, 1 Mo. App. 336; *Goodfellow v. Stillwell*, 73 Mo. 17; *De Laurael v. Kemper*, 9 Mo. App. 77 [2]; *Bell v. Simpson*, 75 Mo. 485; *Johnson v. Johnson*, 81 Mo. 331; *Bank v. Abernathy*, 32 Mo. App. 211; *Mayes v. Robinson*, 93 Mo. 114; *Hagerman v. Sutton*, 91 Mo. 531, 532; *Patterson v. Booth*, 103 Mo. 414, 417; *Jennings v. Todd*, 118 Mo. 303, 304; *Walters v. Walters*, 73 Ind. 425; *McNair v. Prioth*, 33 Mo. 71. (3) Petition states a cause of action. The first note was settled and canceled and

the lien of the first deed of trust released when note was in the hands of parties to the agreement and holders with notice. Such holders were defendants. Defendants, by fraudulently selling the note to a purchaser for a valuable consideration without notice and before maturity, revived the note and the lien of the first deed of trust, and damaged plaintiff by depriving him of his security. (4) The evidence clearly shows that the defendants were not holders for value, without notice, but that they give no consideration for the note, and had no notice of its cancellation. The attempt to make Pat Donnelly the owner of the note is too specious to deserve attention. (5) This act of Brown was a fraud premeditated, calculated and intended to injure, and, as a legal consequence, must, of necessity, injure one of two parties: *First,* Jones, to whom the misrepresentations were directly made, or, *second,* the plaintiff, the holder of the second note and mortgage. As a matter of fact, Jones was not damaged; but, as a matter of fact and direct legal consequence, the plaintiff was damaged and has a good cause of action against defendants for damages. Bigelow on Fraud, pages 198, 199, note; *Benzein v. Lenoir,* 1 Dev. Eq. 225; *Clifford v. Brooke,* 13 Ves. 131; *Emmons v. Moore,* 85 Ill. 304. (6) Shoff and Bentley are not estopped from denying the validity of the first incumbrance. Estoppels by deed can arise only in some action or proceeding based upon the deed. In a collateral action there can be no estoppel. 2 Herman on Estoppel, 579, and cases; Bigelow on Estoppel, p. 352, and cases. (7) Plaintiff is not bound by the recitals of the quitclaim deeds of Judge and Foley. Estoppels by deed will not avail in favor of any but the parties and their privies. Bigelow on Estoppel, p. 334; 1 Herman on Estoppel, sec. 20, and cases; *Scates v. King,* 110 Ill. 456. The defendants were not parties to the quitclaim deeds. (8)

Defendants can not set up estoppel to avoid the consequences of their own fraud. Herman on Estoppel, p. 764. As an estoppel will be called into being for the prevention of a fraud, so it will be suppressed when fraud will be produced by its existence. Citing *Pendleton v. Rickey*, 32 Pa. St. 58; *Insurance Co. v. Martin*, 13 Minn. 59; *Wells v. Graves*, 38 Ill. 455.

SMITH, P. J.—This is an action to recover damages resulting from the reissue and fraudulent transfer of a certain promissory note. There was a trial and judgment for plaintiff, to reverse which judgment defendants have appealed.

The evidence adduced at the trial tended to show that on the eleventh day of November, 1886, Michael G. Fitzmaurice executed to James F. Judge his negotiable promissory note for $500, due three years after date, and to secure the payment of which Fitzmaurice executed a deed of trust on certain real property in Edina, Knox county, in this state, with power of sale to John W. Wofford, trustee, which said deed of trust was thereafter duly recorded in the proper county. This deed of trust correctly described the property by metes and bounds, section, township and range, but located it in Jackson county. This error in the location recited in the description of the property being subsequently discovered by Judge, he requested Fitzmaurice to execute a second note and deed of trust in place of the first, accurately describing the trust property, etc. Accordingly, Fitzmaurice, two or three months afterward, executed to Judge a second negotiable promissory note, dated November 12, 1886, for the same amount as the first, payable three years after date, to secure which a second deed of trust was executed, of the same date as the note, to James E. Adams, trustee, on the same property, by correct description

and location. This latter deed of trust was duly recorded also in the proper county.

It further appears that thereupon Judge sent the first note, with his blank indorsement thereon, with the deed of trust, back to Fitzmaurice. It further appears, from the testimony of witness Wofford, that, at the instance of Judge, he requested Fitzmaurice to execute the second note and deed of trust, and that it was with some reluctance that the latter did so. It further appears, from the recitals in the second note and deed of trust, that the said note was given for part of the purchase money of the same land described in the deed of trust. It further appears that on the ninth of November, 1886, Judge sold and conveyed to Fitzmaurice said real property by the description recited in the second deed of trust. No mention is made of purchase money in the first note and deed of trust.

At the time of the trial both Fitzmaurice and Judge were dead, so that we are deprived of the benefit of any light that their testimony might have shed on the transaction between them. Was the second note and deed of trust given in substitution of the first, and, if so, was it the intention of the parties that the former should be canceled and discharged?

There was no agreement offered in evidence expressly showing what effect the parties intended the second note and deed of trust should have on the first. Whether the execution of the second note and deed of trust operated to discharge the first, *as between the parties*, depends upon their intention. As a general rule, payment, or something done and accepted as payment or satisfaction, can only be held to discharge an obligation. Where anything else than payment is accepted as satisfaction, it must appear that such was the intention of the parties. *Lippold v. Held*, 58 Mo. 213; *Thornton v. Irwin*, 43 Mo. 153; *McDonald v. Hulse*, 16

Mo. 503; *Ralston v. Wood,* 15 Ill. 171; *Flower v. Ell-wood,* 66 Ill. 439. The intention, whatever it be, as shown by the transaction, will govern. *Howell v. Bush,* 54 Miss. 437; *Jones v. Parker,* 51 Wis. 218; *Walters v. Walters,* 73 Ind. 425; Jones on Mortgages, secs. 926, 927; *Sledge v. Oberchain,* 58 Miss. 670; *Packard v. King-man,* 11 Iowa, 219.

In the circumstances surrounding the transaction between Fitzmaurice and Judge we discover two motives actuating Judge in seeking to obtain a second note and deed of trust. The first note and deed of trust made no reference to the fact that the amount of the debt for which the same was given was for purchase money of the land described in the latter. The reference made in the second note and deed of trust to the purchase money afforded some insight into the reasons influencing their execution and delivery. It is quite probable that one of the purposes of Judge in taking the second note and deed of trust was to get his vendor's lien recited therein, so that the same might be made a matter of record. And, no doubt, a further purpose was to have the location of the property, supposed to be insufficiently recited in the first deed of trust, sufficiently recited in the second. Now, assuming that the second note and deed of trust were executed to accomplish these two purposes, the question then is, what effect did the parties intend them to have on the first note and deed of trust?

The inference may well be drawn from the circumstances of the transaction that it was the joint intention of the parties to discharge the first note and deed of trust by the giving and accepting of the second. It can not be reasonably inferred that it was the intention of either Fitzmaurice or Judge that the first note and deed of trust should continue to be operative after the execution of the second. Fitzmaurice did not intend.

to burden his property with liens securing both notes when he owed only one of them, nor did Judge intend to continue the lien of the first deed of trust when he had "mended his holt" by taking the second. When the first note was delivered with the deed of trust back to Fitzmaurice by Judge, they, no doubt, thought that both the first note and deed of trust were extinguished. It is plain to our mind that neither of them thought that the deed of trust, as between them, was thereafter an existing incumbrance. The taking of the second note and deed of trust, with the additional recital of facts therein, and the subsequent surrender of the first, in the manner and under the circumstances shown in the evidence, clearly negative any intention on the part of those parties, or either of them, to keep alive the first deed of trust. They clearly intended to cancel the note and extinguish the lien of the first deed of trust. *Howell v. Bush*, 54 Miss. 437. As between Fitzmaurice and Judge, the first note and deed of trust was as much canceled and discharged as if the note had been surrendered and the deed of trust released on the margin of the record thereof.

This case is not analogous to a class of which *Burns v. Thayer*, 101 Mass. 426, and *Walters v. Walters*, 73 Ind. 425, are conspicuous types. In those cases, the first mortgage given was for purchase money of real estate, and a subsequent mortgage was made to give a more accurate description of the property. The question was whether the wife's right of dower attached when the first mortgage was discharged. It was held that the seizin of the husband was only momentary and did not give the wife dower. Here the first note and deed of trust were given without reference to the vendor's lien for purchase money. A second note and deed of trust were made to evidence a lien for purchase money, as well as to give a more correct description of

the property.  The circumstances under which the first note and deed of trust were discharged and surrendered in the present case are entirely different from those in that class of cases.   The equitable principles established by the class of cases just referred to are inapplicable to a case of this kind.

Looking at the transaction for the present as one about which the parties thereto are alone concerned, we can not resist the conclusion that the evidence abundantly proves that the note and deed of trust, as between them, were canceled and discharged.

In the light of another class of cases, the first note and deed of trust, after the giving and acceptance of the second in substitution thereof, were of no further validity.   *Iowa Co. v. Foster*, 49 Iowa, 676; *Hardin v. Bauer*, 25 Iowa, 364; *Sloan v. Rice*, 41 Iowa, 465; *Taft v. Boyd*, 13 Allen, 84; *Hawkes v. Ins. Co.*, 11 Wis. 188; *Ralston v. Wood*, 15 Ill. 158.

In the month of August, 1888, the defendant, W. H. Brown, undertook to negotiate an exchange of properties between Fitzmaurice and Esther V. Sweeney. He, according to his own testimony, undertook to act for both of these parties.   He succeeded in inducing them to enter into a contract for the exchange.   The defendant, Esther V. Sweeney, at that time sustained to him the relation of *fiancee*.   The contract so entered into between Fitzmaurice and defendant's *fiancee* was not produced in evidence.   It further appears from the testimony of Brown that the Edina property owned by Fitzmaurice was to be conveyed to his *fiancee* subject to an incumbrance of only $500.   It appears further that Brown, on examining the abstract of the title to the Edina property, discovered that the first deed of trust made by Fitzmaurice was an apparent lien thereon.   He thereupon called Fitzmaurice's attention to the matter, who informed him how the

record happened to show two deeds of trust for the same amount. Brown testified that, when he discovered that the abstract disclosed two unsatisfied deeds of trust, he demanded of Fitzmaurice that he transfer the note secured by the first deed of trust to him, and thereupon Fitzmaurice handed over the same to him, with the request that he get Judge to release the first, for the reason that Judge was unfriendly to him, Fitzmaurice. Brown afterward requested Judge to formally release the property from the lien of the first note and deed of trust, which Judge declined to do, unless Fitzmaurice would pay him a certain debt he owed him on another account. Failing in this, Brown took the deed from Fitzmaurice to Miss Sweeney, which was acknowledged on July 17, 1888 and recorded August 30, 1888. On August 1, 1888, Miss Sweeney conveyed the property to Lizzie Shoff, reciting that the grantee therein named assumed the payment of both of the deed of trust notes already described. On the fifteenth day of September then next following, Brown wrote a letter to I. F. Cotty, a lawyer at Edina, telling him that there was in his hands for sale a first mortgage note against the *three acres of land*, that the party needed money and would take $475 for it as it was, and would pay $25 for effecting a sale, etc. In answer to this letter, Mr. Cotty wrote to Brown inquiring whether or not there was in fact two deeds of trust, securing two notes for $500 against the property. To this, Brown replied that the only thing he knew about the matters mentioned in Mr. Cotty's letter to him was that the note was good. He further, by way of postcript to his letter, added that he had just seen Fitzmaurice's brother, who said the note was good and given for money loaned and secured by first deed of trust. On receipt of this last letter, Mr. Cotty again wrote Brown, calling his attention to the words "Jackson County," appearing in the first

deed of trust, and inquiring of him whether the second deed of trust might not have been made to correct the first. In response to this, Brown writes that "the Jackson county business is simply an error of the writer, as the body of the deed contains a description of the land. I know nothing about any other deed made in correction. * * * The owner of the note is Patrick Donnelly." Cotty thereupon sold the note before its maturity, accounting to Brown for the proceeds. Jones, it seems to be conceded, was a *bona fide* purchaser, for value, without notice. Default was made in the payment of the note when it became due. Thereupon the property was advertised under the first deed of trust by the trustee and sold to Jones.

Now, turning our attention to the second note and deed of trust, we find that it appears from the undisputed evidence that Judge, for value, transferred them to one Foley, and he to plaintiff. Judge, in May, 1889, at the instance of Foley, executed a formal release of the first deed of trust, and a few days later a similar release was executed by Foley to the plaintiff.

It is clear that whatever may have been the equities between Fitzmaurice and Judge, or Sweeney, who, through Brown, obtained possession of the first note and mortgage, and the plaintiff, the owner and holder of the second note under Judge, if Jones purchased the first note of Sweeney, or Brown, as has already been stated, the sale under the first deed of trust to Jones passed the title in fee to the property discharged of the lien of the second deed of trust, or, in other words, such transfer of the first note, and the subsequent sale under the deed of trust given to secure it, cut out and destroyed the plaintiff's lien on the property. When Judge indorsed and delivered the first note to Fitzmaurice, and received the second note and deed of trust in lieu of it, he had no longer any interest in that

note and the mortgage given to secure it. As between these parties, it was of no effect and as if it never had been. At the time Fitzmaurice delivered the note to Brown to have Judge execute a formal release of the deed of trust, the former had a right, on production of that note to the recorder, to have the deed of trust marked satisfied on the margin of the record. After Judge transferred the title to the second note, it was out of his power to release either of the deeds of trust. *Hagerman v. Sutton*, 91 Mo. 519; *Joerdens v. Schrimpf*, 77 Mo. 383. And especially as between *bona fide* purchasers and assignees of the note. *Lee v. Clark*, 89 Mo. 553.

If Brown, as we think the evidence tends to show, received the note from Fitzmaurice for the purpose of obtaining a formal release of the deed of trust by Judge, paying nothing of value for it, with full knowledge of the circumstances attending its execution by Fitzmaurice, and the delivery back to him by Judge, then Brown occupied no other or different attitude in respect to the note as received by him and the plaintiff, the owner of the second note, than did Fitzmaurice. The rights of the plaintiff were in no way imperiled, or affected, by the transaction between Brown and Fitzmaurice. The clear tendency of the evidence is to prove that after Brown obtained possession of the note from Fitzmaurice, and found that Judge would not execute a formal release of the deed of trust, he conceived the scheme of placing Fitzmaurice in the position of reissuing the note to him, so as to validate it and the lien of the deed of trust given to secure it, not yet satisfied of record. But Brown seems to have known that the note in his hands was as inefficacious and invalid as in those of Fitzmaurice, so that, to overcome this difficulty, it was necessary to get it, then not yet due, into the hands of an innocent purchaser for value. To

make an apparent showing of good faith and honest dealing, he caused his intended wife, Miss Sweeney, to convey the property acquired of Fitzmaurice to Miss Schoff, reciting therein the assumption by the latter of the payment of both of the Fitzmaurice notes to Judge. Brown next writes to Cotty offering the first note for sale, and at the same time falsely declaring it to be a first lien on the property and that he knew nothing of any second deed of trust made to correct the first; also, that the note was owned by Pat. Donnelly, and by writing these and further falsehoods, he induced Cotty to believe in a state of things that had no actual existence, and thus to become an instrument in his hands to accomplish the sale of the note to an innocent purchaser. The testimony of Brown strongly tends to establish his bad faith and fraud in the transaction. It is uncandid and full of evasions and contradictions. It is difficult to conceive how his conduct could be reconciled with the theory of innocence of the fraud charged. He had but a single purpose in the whole transaction respecting the sale of the note, and that was to benefit himself. To accomplish this, it was necessary for him to perpetrate a fraud on the plaintiff. In this he was successful to the extent of depriving the latter of his security, and for this fraud he ought to answer in damages.

The defendants plead and insist that plaintiff is estopped to deny the validity of the first deed of trust by the recitals in the release read in evidence, from Judge to Foley, and from the latter to plaintiff, and, also, in that of Sweeney to Shoff. The defendants plea and insistence can not be sustained. Defendants were not parties to the first two named releases, and one of them was not a party to the other. The rule is elemental that estoppels by deed will not avail in favor of any but parties and their privies in blood, in law,

and by estate. Bigelow on Estoppel, p. 334; Herman on Estoppel, sec. 20; *Glascow v. Baker*, 72 Mo. 441. And a further reason why there was no estoppel is to be found in the fact that this action is not based on any of said deeds. It is a collateral action. Herman on Estoppel, sec. 579; Bigelow on Estoppel, p. 352. And there is still another principle of law which renders the defense of estoppel unavailable. It is this: As an estoppel will be called into being for the prevention of fraud, so it will be suppressed when fraud will be produced by its existence. *Pendleton v. Recky*, 32 Pa. St. 58; Herman on Estoppel, sec. 628. It is not shown anywhere in the evidence that the defendants were induced by any recital in said deed of release to purchase or sell said first deed of trust note, or that they were in any way misled to their prejudice or injury by reason of such recitals. It is obvious there is no estoppel in the case.

It must be apparent, from what we have said, that the question of what effect Fitzmaurice and Judge intended the execution and delivery of the second note and deed of trust should have on the first, or, in other words, what intention of the parties do the circumstances of the whole transaction evince, was for the jury to decide.

Many questions of fact arising on the pleadings and evidence, which it was appropriate for the jury to decide, were requested to be submitted by the defendant's first, second, fourth and fifth instructions, which should have been given. The peremptory instruction given by the court for plaintiff was improper in the case and should not have been given. The defendants were manifestly entitled to go to the jury on the controverted facts in the case.

The judgment will be reversed and the cause remanded. All concur.