GLASGOW v. BAKER *et al., Appellants.*

1. **Land and Land Titles:** ST. LOUIS COMMON FIELD LOTS: ACT OF CONGRESS OF JUNE 12, 1812. It is the settled construction of the act of congress of June 12, 1812 (2 U. S. Statutes at Large, 748), that the act, by the force of its own terms, vested in each inhabitant of the then village of St. Louis the title in fee to the common field lot which he possessed or cultivated prior to December 20, 1803, the date of the cession from France to the United States. Said act conferred on such inhabitant the lot so possessed or cultivated without any conditions of survey, or without any other or further proof of title derived from the Spanish or French government than that of inhabitancy and cultivation or possession. *Glasgow v. Lindell's Heirs*, 50 Mo. 60, and *Glasgow v. Baker*, 72 Mo. 441, re-affirmed.

2. ———— : ———— : ————. The confirmees under the act of congress of 1812 by complying with the act of congress of May 24, 1824 (4 U. S. Stat. at Large 65), making it their duty to designate their out lots by making proof of their boundaries, possession and cultivation before the recorder, secured a recognition of the boundaries, but there was no forfeiture by reason of their failure to do so. The confirmee still held the title by force of the act of 1812.

3. ———— : ———— : ————. The title confirmed by the act of 1812 is a good title, although the surveyor general failed to include the land within the boundaries of the survey made by him.

4. ———— : ———— : ————. The act of congress of March 6, 1820, granting the sixteenth section in each township for school purposes did not extend to any of the common field lots confirmed by the act of 1812; not even to those not rightfully owned by the individuals claiming them.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*C. Gibson* and *C. E. Gibson* for appellants.

(1) The location of the sixteenth section within the range of the common field lots of the Grand Prairie is void. *Glasgow v. Lindell Heirs*, 50 Mo. 60, and *Glasgow v. Baker*, 72 Mo. 441; *Page v. Scheibel*, 11 Mo. 187;

*Glasgow v. Hortiz*, 1 Black, 595. An abandonment is not presumed, but must be affirmatively proved, and when the defendants show that all the land was in cultivation it devolves upon them to prove that there were any abandoned lots in Grand Prairie field. *Tayon v. Ladew*, 33 Mo. 205 ; *Clark v. Hammerle*, 36 Mo. 620 ; *Fine v. Schools*, 39 Mo. 63. (2) Even if the surveys were invalid and did not conform to the certificates of confirmation (which is denied) still their correctness or validity cannot be questioned by the plaintiff, as they are conclusive as to him. *Carondelet v. St. Louis*, 29 Mo. 527 ; *McGill v. Sommers*, 15 Mo. 80 ; *Milburn v. Hardy*, 28 Mo. 520. (3) The certificates of confirmation and surveys thereunder were valid and were at least *prima facie* evidence against plaintiff. *Page v. Scheibel*, 11 Mo. 173 ; *Joyal v. Rippey*, 19 Mo. 660 ; *Boyce v. Papin*, 11 Mo. 25. (4) The judgment in any event should be set aside as to the Laroche arpent. In the second judgment the failure of the court to grant plaintiff a judgment for the Laroche tract was a direct adjudication that he was not entitled to said tract *Thompson v. McKay*, 41 Cal. 221 ; *Woodin v. Clemons*, 32 Ia. 280 ; *Johnson v. Murphy*, 17 Tex. 216. A judgment was not always a unit even at common law and certainly not under the code. 3 Bac. Abr. 386 ; *Hopkins v. Organ*, 15 Ind. 188 ; *Wescott v. Bridewell*, 40 Mo. 146 ; *State v. Alexander*, 56 Mo. 131 ; *Morgan v. Railroad*, 76 Mo. 161 ; *Thorpe v. Johnson*, 76 Mo. 662 ; *Ricketson v. Richardson*, 26 Cal. 149 ; *Safford v. Navarro*, 15 Tex. 76 ; *Coghill v. Boring*, 15 Cal. 213 ; *Rogers v. Weil*, 12 Wis. 663. (5) It was error in the court to exclude the report of the surveyor general to the commissioner of the general land office of January 30, 1855. Although it may be hearsay, yet the latter is admissible to establish the boundaries of land of individual proprietors. *Boardman v. Reed*, 6 Pet. 328 ; *Kinney v. Farnsworth*, 17 Conn. 363 ; *Higley v. Bidwell*, 9 Conn. 447 ; *Wooster*

*v. Butler*, 13 Conn. 316; *Tasser v. Herring*, 3 Devereux 340; *Van Deusen v. Turner*, 12 Pick. 532; *Fall Co. v. Worster*, 15 New Hamp. 437; *Smith v. Powers*, 15 New Hamp. 564.

*Collins & Jamison* for appellants.

(1) The lands claimed by defendants come within the definition of a common field lot as declared by the Supreme Court of Missouri and of the United States. *Page v. Scheibel*, 11 Mo. 183. (2) The lands claimed by appellants being common field lots, were all confirmed by the act of June 13, 1812, *proprio vigore*, and neither confirmation certificate, survey, nor other documentary proof is necessary to establish the title to such land under said act. *Milburn v. Hardy*, 28 Mo. 514; *Glasgow v. Lindell's Heirs*, 50 Mo. 60; *Glasgow v. Baker*, 72 Mo. 441; *Guitard v. Stoddard*, 16 How. 494; *Milburn v. Hortiz*, 1 Black, 595. (3) The evidence introduced by appellants being uncontroverted, and the circuit court having found as a fact, that all of the land sued for lies within the out boundary lines of the great prairie common field of St. Louis, all of which was prior to twentieth of December, 1803, by inhabitants of the town of St. Louis, inhabited, cultivated or possessed as continuous, contiguous common field lots, the circuit court erred in finding for plaintiff. *Glasgow v. Lindell's Heirs*, 50 Mo. 60; *Glasgow v. Baker*, 72 Mo. 441. (4) The evidence as to inhabitation, cultivation, possession and boundaries, being the identical evidence introduced upon the two former trials of this case, and having by the Supreme Court of Missouri been adjudged sufficient, not having been disputed or controverted by plaintiff, is conclusive upon him. *Glasgow v. Lindell's Heirs*, 50 Mo. 60; *Glasgow v. Baker*, 72 Mo. 441. (5) The fact that the common field lots claimed by defendants, are excluded by the out boundary traced upon the map read in evidence by

plaintiff, does not confer any title upon plaintiff. *Milburn v. Hortiz*, 1 Black, 595. (6) The evidence introduced by defendants was sufficient to establish a title outstanding, and plaintiff not having proved that he was the only person entitled to the land sued for, he never having been in possession, the court below erred in finding for the plaintiff. R. S., Mo. (1879) p. 373, sec. 2240 ; *Beal v. Hammon*, 38 Mo. 435 ; 2 Greenl. Evid., sec. 303 ; Adams on Eject. 33 ; *Glasgow v. Lindell's Heirs*, 50 Mo. 60 ; *Glasgow v. Baker*, 72 Mo. 441. (7) The defendants, as above, conclusively proved that all of the land sued for was, by the act of 1812, confirmed as common field lots, and there is no evidence tending to prove any abandonment of any of these lots. *Page v. Scheibel*, 11 Mo. 167 ; *Glasgow v Baker*, 72 Mo. 441. (8) Even had plaintiff established that any of these lots had been abandoned by the grantors under the act of 1812, this fact would not entitle plaintiff to recover. *Glasgow v. Baker*, 72 Mo. 441. (9) The circuit court erred in declaring that the surveys of common field lots, introduced in evidence, were not *prima facie* evidence of the locations of the lots surveyed. *Soulard v. Allen*, 18 Mo. 591 ; *Milburn v. Hardy*, 28 Mo. 514 ; *City v. Toney*, 21 Mo 243. (10) The Supreme Court of Missouri has twice declared that the sixteenth section cannot interfere with the common field lots confirmed by the act of 1812, and that the only question left in the case was whether the Lindell heirs had accepted the surveys of some of those lots made nine arpents and thirty-six feet west of the true front line, and the plaintiff having upon the last trial abandoned that defence to defendants' title, the court below erred in finding for plaintiff. *Glasgow v. Lindell's Heirs*, 50 Mo. 60 ; *Glasgow v. Baker*, 72 Mo. 441. (11) The court below erred in holding that the survey of the Laroche lot was void, because embracing two in place of one arpent in width. *Milburn v. Hardy*, 28 Mo. 514.

*John Flournoy* and *B. A. Hill* also for appellants.

*M. L. Gray* and *J. D. S. Dryden* for respondent.

(1)   The survey of section sixteen of township forty-five, range seven, east, by the United States, specifically locating said section by metes and bounds identified by the evidence in the cause, of which the land in controversy is part, the act of congress of March 6, 1820, and the ordinance of the people of Missouri, of July 19, 1820, and the act of the legislature of Missouri of March 3, 1851, and the order of the county court of 1853, constitute a *prima facie* right and title in the plaintiff to recover the land sued for:   Act of congress, March 6, 1820 (R. S., 1825, p. 37, sec. 6); Ordinance of Convention, of July 19, 1820 (R. S., 1825, 40); Act of Legislature of Missouri, of March 3, 1851 (Session Laws of 1851, 706); *Glasgow v. Baker*, 50 Mo. 78; s. c., 72 *Id.* 443; *Payne v. St. Louis County*, 8 *Id.* 477; *State v. Ham*, 19 *Id.* 592; s. c., 18 How. (U. S.) 126.   (2) The town schools derived no rights to the lands in dispute by the act of congress of the thirteenth of June, 1812.   The reservation by that act for the use of the schools of the town is by the terms of the act restricted to the lands lying inside the outboundary which the first section of the act required the principal deputy surveyor to run.   Act of June 13, 1812 (2 U. S. Stat. at Large, 750); Act of May 26, 1824 (4 U. S. Stat. at Large, 66). . The required survey of the outboundary was duly made by the proper officer, and is shown by a map in evidence called map X; but the lands in dispute are not within it, but outside and beyond it.   The survey represented by map X has been irrevocably fixed by the United States as the outboundary required by said act of 1812, by the decision of the commissioner of the general land office, affirmed on appeal by the Secretary of the Interior.   And the courts

have always held accordingly. *Trotter v. Schools,*
9 Mo. 69 ; for instructions nine and twelve, see page 78,
and for opinion, 84–5 ; *Eberle v. The Schools,* 11
*Id.* 247 ; *Kissell v. Schools,* 16 *Id.* 553 ; s. c., 18 How.
(U. S.) 28. But even if the land in dispute, being
vacant land, was reserved by the first section of said
act of June 13, it was but a reservation, and not a
grant ; the property remained the property of the gov-
ernment and subject to any disposition the government
might see fit to make of it. *Hammond v. Schools,* 8 Mo.
73–4 ; *Eberle v. Schools,* 11 *Id.* 262, 264 ; *State v. Ham,*
19 *Id.* 601. (3) The survey of a common field lot, con-
firmed under the act of June 13, 1812, which purports to
be made in accordance with the calls and boundaries
mentioned in the confirmation, is *prima facie* evidence
of the true location of the lot confirmed ; but a survey
that does not purport to be made in accordance with
such calls and boundaries is not *prima facie* or any
evidence of such location. And under the evidence the
trial court correctly decided the law as applicable to the
surveys in evidence. *Glasgow v. Baker,* 50 Mo. 80 ;
*Vasquez v. Ewing,* 42 *Id.* 256, *et seq. ; Blumenthal v.
Roll,* 24 Mo. 115 ; *Clark v. Hammerle,* 36 *Id.* 637.
(4) The certificate of recorder Renard, issued to
Laroche's legal representatives in 1857, is a nullity.
*Gamache v. Piquignot,* 17 Mo. 310 ; s. c., 16 How.
451. (5) Bizet was a confirmation under the act
of July 4, 1836, and a junior title to that of plain-
tiff. *DeLaurrier v. Emerson,* 14 Mo. 37 ; s. c.,
15 How. 525 ; *Les Bois v. Brammel,* 4 How. 449 ;
*Sigerson v. Dent,* 29 Mo. 489 ; *Kennett v. Cole
County,* 13 Mo. 139 ; *Menard v. Massey,* 8 How. 293.
(6) The *ex parte* affidavits taken before recorder Hunt
and surveyor Cozens, and put in evidence by the defend-
ants, were incompetent as evidence, beyond the effect
that the court gave them. *Gamache v. Piquignot,*
17 Mo. 324 ; *City v. Toney,* 21 Mo. 255–6 ; *Clark*

*v. Hammerle*, 36 Mo. 639; s. c., 27 Mo. 71; *Williams v. Carpenter*, 28 Mo. 461. (7) There is no such thing as a confirmation under the act of June 13, 1812, *en masse*, but only to known and ascertained persons, and of a definite and ascertained lot. Act of June 13, 1812, 2 U. S. Stat. at Large, 748; Act of May 26, 1824, 4 U. S. Stat. at Large, 65; *Hammond v. Coleman* (not reported); s. c., 4 Mo. App. 315; *Glasgow v. Baker*, 50 Mo. 81; *Guitard v. Stoddard*, 16 How. 493; *Glasgow v. Hortiz*, 1 Black, 595; *Page v. Scheibel*, 11 Mo. 167, 183; *Landes v. Perkins*, 12 Mo. 238; *Byron v. Sarpy*, 18 Mo. 455; *Gamache v. Piquignot*, 17 Mo. 310; *Vasquez v. Ewing*, 42 Mo. 248; *Papin v. Hines*, 23 Mo. 277; *Glasgow v. Baker*, 72 Mo. 441; *Tayon v. Ladew*, 33 Mo. 208. (8) The mere fact that the land in dispute lay within the exterior limits of the common fields of the Grand Prairie of St. Louis was no obstacle to the plaintiffs' title attaching under the act of Congress of the sixth of March, 1820, provided the disputed premises were at that time vacant land. Act of Congress of thirteenth of June, 1812, sec. 2, *supra;* act of congress May 26, 1824, sec. 1, *supra;* act of Congress of fifteenth June, 1864 (13 U. S. Stat. at Large, 132); act of Congress, thirtieth of June, 1864 (13 U. S. Stat. at Large, 581); act of Congress, twenty-first of March, 1866 (14 U. S. Stat. at Large, 12); *Hammond v. Schools*, 8 Mo. 65; *Eberle v. Schools*, 11 *Id*. 247; Vacancies 260; *State v. Ham*, 19 Mo. 592; s. c., 18 How. 126; *Glasgow v. Baker*, 50 Mo. 67, and 79; *Hammond v. Coleman* (unreported opinion of supreme court in 1878, by Napton, J.) (9) The case as made by the evidence is insufficient to sustain the defence of outstanding title. *McDonald v. Schneider*, 27 Mo. 405; *Greenleaf's Lessee v. Birth*, 6 Pet. 312; *Peck v. Carmichael*, 9 Yerg. 325; *Vasquez v. Ewing*, 42 Mo. 256–8; *Glasgow v. Baker*, 50 *Id*. 73–79; *Totten v. James*, 55 *Id*. 496–7. (10) The grant of the

sixteenth section to the state is not a gratuity, as supposed by the other side, but is a grant for a valuable consideration. *Payne v. St. Louis County*, 8 Mo. 476–8; *State v. Ham*, 19 Mo. 601. (11) The alleged previous judgments in this case as to the Laroche tract are no bar; (*a*) there are no such judgments (*b*) if there were any such they were nullified by subsequent reversals. Freeman on Judgments, secs. 333, 481, and cases there cited; Bigelow on Estop. (3 Ed.) p. 29, and note 1; *Green v. Stone*, 1 Harris and J. 409; *Duprey v. Robuck*, 7 Ala. 486; *Wood v. Jackson*, 8 Wend. 9–36; *Smilh v. Frankfield*, 77 N. Y. 414. After the reversal of an erroneous judgment, the parties have the same right in the lower court as they originally had. *Stearns v. Aguirre*, 7 Cal. 448; *Phelan v. San Francisco*, 9 *Id.* 16; *Argenti v. San Francisco*, 60 *Id.* 462; *Simmons v. Price*, 18 Ala. 407. The utmost that can be claimed for the former trials is, that on one of the trials there was a verdict for the defendants as to so much of the land sued for as is comprehended in Laroche; but no judgment for defendants thereon. A mere verdict without judgment thereon does not work an estoppel. Bigelow on Estop. (3 Ed.) 33; *Webb v. Buckalew*, 82 N. Y. 555; *Easton v. Pickersgill*, 75 *Id.* 599; *Diggs v. Pursell*, 74 *Id.* 377; *Dwight v. St. John*, 25 *Id.* 203. There can be but one final judgment under our law. R. S., secs. 3603, 3679; G. S. of 1865, p. 680, sec. 8. The reversal of a final judgment destroys the judgment in its entirety. *Dickerson v. Chrisman*, 28 Mo. 134, 141. (*c*) Said pretended judgments were not plead, nor put in evidence, and were neither considered nor passed on by the trial court, and they formed no part of the record herein, and they should be wholly disregarded. R. S., 1879, sec. 3521. (*d*) The case was tried upon the theory that the defendants' rights to the property supposed to be affected by the pretended recovery was an open question and to be determined ac-

cording to the rights of. the parties plaintiffs and defendants, as they existed at the beginning of the suit; and the defendants, by their answer, and by what happened on the trial and after the trial, abandoned the pretended defence of former recovery. *Leabo v. Goode,* 67 Mo. 133. (12) Instructions should be considered and construed in their combination and entirety. *McKeon v. Citizens, etc.,* 43 Mo. 407; *Moore v. Mo. Pacific Railroad Co.,* 73 *Id.* 438; *Noble v. Blount,* 77 *Id.* 240. And if thus considered and construed, they are found to contain a fair exposition, of the law as applicable to the facts of the case, the verdict will not be disturbed by reason of the refusal of other instructions which in themselves were unobjectionable. *Leabo v. Goode,* 67 Mo. 131 ; *State v. Wissmark,* 36 *Id.* 592; *State v. Walton,* 74 *Id.* 270, 285.

BLACK, J.—The plaintiff claims title to the premises in dispute by act of congress of the sixth of March, 1820, for the admission of Missouri into the union ; the act of the general assembly of March 3, 1851, and an order of the county court of St. Louis county of the eleventh of April, 1851, made pursuant to that act, appointing the plaintiff and two other persons commissioners to take possession of and sell the sixteenth section, township forty-five, range seven, east. The defendants claim title from owners or alleged owners of Grand Prairie common field lots under the act of congress of June 13, 1812, making further provisions for settling the claims to land in the territory of Missouri ; and the defendant also sets up such claims as an outstanding title.

This is one of several suits commenced in 1853 by these commissioners. It has been here twice before on appeals, prosecuted by the defendants or their ancestors. The other suits were determined years ago in this and the Supreme Court of the United States in favor of de-

fendants. The evidence in this case is now substantially the same as it was when the case was here on the first appeal (50 Mo. 60). It was then stated at length and need not be again repeated.

The record now contains an admission that all of the land claimed on the trial lies within the limits of Grand Prairie common field of St. Louis.

It is the long and well-settled construction of the act of congress of June 13, 1812 (2 U. S. Statutes at Large, 748), that the act, by the force of its own terms, vested in each inhabitant of the then village of St. Louis the title in fee to the common field lot which he possessed or cultivated prior to December 30, 1803, the date of the cession from France to the United States. It confirmed to such inhabitant the lot so possessed or cultivated without any conditions of survey, and without any other or further proof of title derived from the Spanish or French governments than that of inhabitancy and cultivation or possession.

By the first section of the act of 1812 it was made the duty of the principal deputy surveyor to survey the out boundaries of the village so as to include the out lots, common field lots and commons, and to make a plat of such survey. The second section provides that all town or village lots, out lots, or common field lots, included in such survey, which are not rightfully owned or claimed by any private individuals, or held as commons, or that the president shall not reserve for military purposes, "shall be and the same are hereby reserved for the support of schools in" the village, the quantity reserved for such school purposes, however, not to exceed the one-twentieth part of the whole land included in the general survey of the village. By the act of congress of May 24, 1824 (4 U. S. Stat. at Large, 65), it was made the duty of these individual claimants of village lots, out lots and common field lots, "to designate their lots by proving before the recorder of land titles," within eighteen months, "the fact

of such inhabitation, cultivation or possession, and the boundaries and extent of such claims, so as to enable the surveyor general to designate the private from the vacant lots."

Although this sixteenth section was surveyed as far back as 1818, yet the surveyor general failed to survey and make a plat of the out boundaries of the village, as directed by the act of 1812, until 1840, and when he did then make the survey and plat he did not include in such survey and plat, but excluded the Prairie Des Nowyer, Cul de Sac and Grand Prairie common fields.

The common field lots here in question were not included in that survey and map, known as map X of 1840. The portions of these common field lots recovered by the plaintiffs in this suit in the circuit court are also within the boundaries of this sixteenth section. It is a well established law that the confirmee under the act of 1812, by complying with the act of 1824, secured a recognition of his boundaries, but there could be no forfeiture by reason of his failure so to do. He still held the title by force of the act of 1812. *Page v. Scheibel*, 11 Mo. 167; *Milburn v. Hardy*, 28 Mo. 514; *Guitard v. Stoddard*, 16 How. 494; *Glasgow v. Hortiz*, 1 Black, 595.

Nor did the failure of the surveyor general to include in the survey of 1840 these common field lots affect the rights of the owners or confirmees of such common field lots so excluded. *Glasgow v. Hortiz*, 1 Black, 595; *Milburn v. Hortiz*, 23 Mo. 336; *Tayon v. Hardoman*, 23 Mo. 539; *Schultz v. Lindell*, 24 Mo. 567.

Thus far the law is well settled. Much was said on argument as to a confirmation *en masse* by the act of 1812, without regard to individual claimants, or, as we understand the claims, that the common field was confirmed in a body. It is supposed some countenance is given to this view of the case in the opinion of the court on the second appeal. 72 Mo. 441. We find nothing in any of the vast number of cases which have arisen under

this act which leads to such a conclusion. The evident purpose of the act was, so far as these common field lots are concerned, to confirm to each inhabitant the particular lot which he possessed or cultivated, and to reserve for the purposes stated in the act the lots not rightfully owned or claimed by individuals. Judge Napton, who pronounced the judgment of this court on the second appeal, was thoroughly conversant with these titles and participated from an early day in giving to these statutes the construction and application before mentioned.

It must be borne in mind that the evidence, then, as now, considering the long lapse of time, was of the strongest character, to the effect that these common field lots now in question had a common or continuous east and west end boundary, well defined by Spanish monuments, a width of from one to two, and a length of forty arpents, all lying contiguous, and that they had been cultivated or possessed, prior to 1803, by those to whom they were surveyed under the act of 1824. On this state of facts it is evident there was no title in the United States which they could vest in the state by the act of 1820. The question of side boundaries might be a matter of consequence as between those claimants, but upon that state of facts would be a matter with which the plaintiff could have no concern. It was then contended that the defendant and those lot claimants were bound by the survey of 1857, which removed those lots some nine arpents to the west, so that they did not interfere with the 16th section, but it was held they were not estopped from claiming under the survey made in 1855, which the evidence abundantly showed was the true and correct survey, the one which conformed to the true boundaries of the common field. It was then said : "No pretension is made that the sixteenth section could interfere with the common field lots confirmed by the act of 1812, since that act disposed of them all."

It was also in substance stated that portions of these

lots may have been abandoned by those who cultivated them, but that the abandoned lots would by this act go to the village schools, not to these commissioners, and the plaintiff had no right on that ground, and vacancies, such as sink holes would go to the government for military purposes, and hence it was also said, "the material and controlling question was whether the land was within the limits of the common field lots; for, if it was, it was plain the sixteenth section could not interfere with such title."

It does not appear to be now as then contended that the defendants are bound by the survey of 1857 of these lots, but the admission is in that respect, as before stated, that the property in dispute lies within the Grand Prairie common field, and the correctness of the survey of 1855, as to the proper location of the east ends of the lots, is not disputed as we understand the record.

It is, however, now insisted by the plaintiff that the sixteenth section may interfere with these common field lots and attach to such of them as were not rightfully owned and claimed by individuals, and, hence, that the plaintiff is in a position to dispute the validity of the claims set up under Laroche, Bouis, Baccanne and Bizet, and further to show that there is no title outstanding in them. The instructions, as a body, are based upon the theory that the sixteenth section may and does attach to the lots not rightfully owned or claimed by individuals, if any such there are within its boundaries. It would seem to be proper to dispose of this question and it will, therefore, be considered.

As we have seen by the second section of the act of 1812, all common field lots included within the outboundary survey, as directed to be run by the act of 1812, and not rightfully claimed by any individual, and not reserved by the president for military purposes, were reserved for the support of the schools of the village, not exceeding one-twentieth of all the

land included in such out boundary. Thus the matter stood until the act of 1820. The language of that act is "that section numbered sixteen in every township, and when such section has been sold, or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to the state for the use of the inhabitants of such township for the use of schools." In order to show that the act of 1820 may apply to the lots in question, evidence is offered which shows that long after the false out boundary of 1840 had been made, and in 1853, the schools applied to the commissioner of the general land-office to have this boundary corrected and run in accordance with the act of 1812, which application was refused, and that ruling was approved on an appeal to the Department of the Interior. It also appears that there has been set apart to the schools the one-twentieth of the land within the out boundary as made in 1840, and the title to the land so set apart was vested in the schools by the act of July 27, 1831. (4 U. S. Stat. at Large, 1435). As the schools could not go beyond this survey of 1840, and as that did not include these common fields as it should have done, it follows that the schools have been deprived of much property. The schools, therefore, not at this late day being able to recover this property, it is claimed the sixteenth section may attach thereto. Now, if this is a correct view of the case, then the plaintiff acquired the property in suit, and he comes to the title because of the failure of the surveyor general to perform his duties, or, perhaps, as intimated, because the schools assented to the false out boundary. The plaintiff's title must then have been contingent from the start and depended upon the conduct of these officers and the schools, for, by the acts of 1812 and 1824, it remained to the government by its officers to ascertain and set apart to the schools the particular parcels of property reserved for them. If a

true out boundary had been made, all of these common fields would have been considered in determining the aggregate amount going to the schools, and the abandoned lots would have constituted a part of the reserved property, certainly so until the one-twentieth was ascertained.

We cannot come to the conclusion that the act of 1820 was designed to take effect and operate in this way. By it, where the sixteenth section had been sold or otherwise disposed of, ample provision is made for an equivalent elsewhere. In construing these acts of congress we must endeavor to look to them as of the date of their passage, and in the light of the then history of the legislation upon the same subject and condition of the subject matter before congress. Congress could not have contemplated in 1812 or in 1820 that the surveyor general would thus fail to cause to be made a true out boundary, and certainly such a thing was not contemplated in 1824.

It is quite true that a reservation does not amount to a grant, and that the title to the abandoned common field lots remained in the government subject to any disposition it saw fit to make of them, but they had been reserved for a defined and specific purpose, and we are not at liberty to presume a purpose on the part of congress to divert that disposition, and we find nothing in the act of 1820 which requires us to give to it that construction, or which leads to a conclusion that it was designed thereby to divert the former disposition of the abandoned lots. We conclude the sixteenth section grant was not designed to, and that it did not, invade these common field lots, recognized as such prior to 1803. Upon this record the plaintiff has no title to them, and the judgment should have been for the defendant.

Besides this, as the plaintiff's title, if he has any, must come to him subject to the prior right of the

Glasgow v. Baker.

.schools, and as their rights were in a measure subject to the .acts and conduct of the surveyor general, the plaintiff is not in the most favorable position to dispute the claims of the persons to whom the property was surveyed by .specific boundaries because cultivation and inhabi-tancy proved to the satisfaction of the recorder of land titles. It in any event devolved upon him to show .affirmatively that the claimants, Laroche, Bouis, Bac-·canne and Bizet, did not possess or cultivate their re-spective parcels, and such proof was necessary to .overcome the documentary evidence. But as the cause is disposed of on other grounds, we need not enter into .a consideration of the title of defendants. We have not .overlooked the act of congress of June 15, 1864 (13 U. S. Stat. at Large, 132), by which the United States granted ·to the state all of their right and title in and to all the parcels of land within the Grand Prairie common field, in township forty-five, for the support of schools in that township. It does not aid the commissioners .acting under the act of the general assembly of 1851. This suit was commenced in 1853. The judgment is re-·versed. All concur.