BAIRD, *et al.*, *Appellants*, v. ST. LOUIS HOSPITAL ASSOCIATION.

In Banc, June 6, 1893.

1. **Sheriff's Deed**: COLOR OF TITLE. A sheriff's deed though invalid because not acknowledged, will give color of title.

2. **Public Lands**: ST. LOUIS TOWN LOTS: CONFIRMATION OF TITLE: ACT OF CONGRESS. The act of congress of June 13, 1812, provides that "the titles of town lots in the several towns or villages of St. Louis which have been inhabited, cultivated or possessed prior to December 20, 1803, are hereby confirmed to the inhabitants of the respective towns or villages aforesaid according to their several right or rights in common thereto, provided that nothing herein contained shall be construed to affect the rights of any persons claiming the same lands or any part thereof whose claims have been confirmed by the board of commissioners for adjusting and settling claims to land in said territory." *Held*, that the act operated as a grant and the proviso therein did not exclude claims which had been confirmed by the commissioners.

3. ———: ———: ———: ———. Said act of congress did not take effect as a grant of undefined or floating claims, but operated on those town lots, outlots and common field lots where there was an existing recognized claim of title with ascertained boundaries or boundaries which could be ascertained and which lots had been inhabited, cultivated or possessed prior to December 20, 1803.

4. ———: ———: ———: ———. The evidence produced on the trial of this case *held* sufficient to show the requisite possession under claim of title by defendant's predecessor of the lot in controversy and also that it was a town lot having ascertained or ascertainable boundaries.

*Appeal from the St. Louis City Circuit Court.*—Hon.
. Jacob Klein,. Judge.

Affirmed.

*Henry H. Denison* for appellants.

(1) Defendant admits title of plaintiffs' ancestor.
It cannot then dispute that title, nor question the
confirmation of the old board of commissioners, or its
character, nor the authorized survey thereunder.
*Brown v. Brown*, 45 Mo. 412; *Boyce v. Papin*, 11 Mo.
16; *Archer v. Bacon*, 12 Mo. 149; *Ehrhardt v. Hogaboom*,
115 U. S. 67. (2) The old board of commissioners, in
approving the confirmation, declared that it should be
surveyed according to the seventh section of the act of
congress of March 3, 1807, and that the survey must
conform to a possession. This was both to prevent
interferences and to segregate the tract from the
domain of the king; in other words, to give it a
definite location and boundaries. It was thereby
excluded from the operation of the act of June 13,
1812. *Vasquez v. Ewing*, 42 Mo. 247; *Le Beau v.
Armitage*, 47 Mo. 138; *Le Beau v. Armitage*, 56 Mo.
191; *Gurno v. Adm'r of Janis*, 6 Mo. 330; *Le Beau v.
Garvin*, 37 Mo. 556; *Guitard v. Stoddard*, 16 How. 511;
*U. S. v. Lawton*, 5 How. 28; *Tayon v. Ladew*, 33 Mo.
208; *Page v. Scheibel*, 11 Mo. 183; *Papin v. Hines*, 23
Mo. 279; *Carondelet v. St. Louis*, 1 Black, 189;
*Dredge v. Forsyth*, 2 Black, 569. (3) There is no bar
to plaintiffs' action by the statute or limitations.
*Miller v. Dunn*, 52 Mo. 216; *M'Ilhenney v. Ficke*, 61
Mo. 329; *Gray v. Burgess*, 16 How. 65; *Magwire v.
Tyler*, 8 Wall. 665; *Gibson v. Chouteau*, 13 Wall. 103.
(4) A new survey, and its approval by the proper
authority, operates as a disappoval of an earlier survey

for the same tract. *Snyder v. Sickles*, 98 U. S. 203; *Magwire v. Tyler*, 8 Wall. 665; 1 Black, 195. (5) The sheriff's deed to A. E. Reilhe has neither seal nor acknowledgment, does not purport to convey the property described in the petition, was in pursuance of a sheriff's sale under an execution made after the return day of the execution, and is void. *Allen v. Moss*, 27 Mo. 354; *Ryan v. Carr*, 46 Mo. 483; *Allen v. King*, 35 Mo. 217; *Adams v. Buchanan*, 49 Mo. 64; *Hammond v. Coleman*, 4 Mo. App. 307; *Speck v. Wohlein*, 22 Mo. 310; *Miller v. Powell*, 53 Mo. 252. (6) The defendant, having based its title upon a sheriff's void deed, the court will not presume that Reilhe ever had a valid deed from Baird. *Allen v. Moss*, 27 Mo. 354; *Reaume v. Chambers*, 22 Mo. 53; *Brown v. Brown*, 45 Mo. 412. (7) There is no evidence that the tract in dispute had an existence as such, under the former government, with a definite location and boundaries.

*E. T. Farrish* for respondent.

(1) The act of congress of June 12, 1812, acted on the confirmation in favor of John Coons and clothed him with a complete legal title at that date. *Ryan v. Carter*, 93 U. S. 78; *Langdeau v. Hanes*, 21 Wall 523; *Morrow v. Whitney*, 95 U. S. 531; *Palmer v. Low*, 98 U. S. 17; *Whitney v. Monrow*, 112 U. S. 695; *Tripp v. Spring*, 5 Sawyer, 209, 216; *United States v. Land Grant Co.*, 26 Fed. Rep. 120. (2) The lot here in question was not part of the public domain, which vested in the United States absolutely, but was a lot to which the rights of a citizen had attached during the Spanish and French possession of the country, and which, under the treaty between this government and France, under which the territory of Louisiana was ceded to the United States, this government was bound

to maintain and protect. (3) When a lot confirmed has such definite boundaries as to locate it, no survey is necessary, and the statute of limitations applies. *Aubushon v. Ames*, 27 Mo. 89; *St. Louis University v. McCune*, 28 Mo. 481; *McCune v. O'Fallon*, 32 Mo. 13; 18 Howard, 412; 8 Wallace, 660. (4) The defendant, and those under whom it claims, having entered under Coons and Baird, under deed from the latter, which gave color of title, the adverse possession which they have held and maintained to the lot not only constituted a complete defense, but such possession vested in defendant the complete title of said Baird, or his heirs, and their assigns, as fully as though defendant had acquired it by deed. *Biddle v. Mellon*, 13 Mo. 335; *Blair v. Smith*, 16 Mo. 273; *Warfield v. Lindell*, 38 Mo. 578; *Nelson v. Brodhack*, 44 Mo. 600; *Wall v. Shindler*, 47 Mo. 282. (5) The sheriff's deed of July 13, 1812, recites the confession of judgment by Baird in that year, and it is a fair presumption that he was present at the time of the sale and acquiesced in the sale. He returned in 1821 or 1822, and must have known that parties claiming under said sheriff's sale were in possession, and yet he made no claim, at least there is no evidence that he did.

BLACK, C. J.—This was an action of ejectment commenced in 1875, to recover a parcel of land in the southern part of block 80 in the city of St. Louis. The record discloses the following facts:

Samuel Solomon by his deed, dated the seventeenth of July, 1804, conveyed to John Coons the following property in the town of St. Louis; that is to say, "a lot of ground one hundred and twenty feet of front upon three hundred feet in depth situate in the Third street of this town, bounded on the southern side by a lot of Louis Baury, on the north by the land of a free

mulatress named Esther and behind by the Domain of the King, upon which lot there is a farm house of twenty-five feet of depth by fifteen of width, which the said purchaser acknowledges to have seen and visited." This deed states that Solomon was an inhabitant of the town of St. Louis and that Coons was to be placed in immediate possession.

On the eighteenth of March, 1811, John Coons conveyed the lot to James Baird, describing the premises as "a certain town lot situate in the town of St. Louis, consisting of one hundred and twenty feet in front by three hundred feet in depth, bounded easterly by Third street * * * westerly by the vacant land, northerly by Louis Baury and southerly by a cross-street which separates it from the free mulatto woman, Esther." This deed sets forth by way of recitals that the lot thereby conveyed is the same lot which was conveyed on the eleventh of October, 1795, and on the fifteenth of November, 1798, giving the names of the grantor and grantee in each case, and by a deed from one Vien to Solomon, dated seventeenth of December, 1802, and it also recites the deed from Solomon to Coons, before mentioned, dated seventeenth of July, 1804.

On the tenth of June, 1811, the old board of commissioners granted to Coons the following certificate numbered 938:

"We the undersigned commissioners for ascertaining and adjusting the titles and claims to lands in the Territory of Louisiana, have decided that John Coons, claiming under Samuel Solomon, original claimant, is entitled to a patent under the provisions of the second section of an act of the congress of the United States, entitled 'An act for ascertaining and adjusting the titles and claims to land within the territory of Orleans and the District of Louisiana,

passed the second of March, 1805, for one hundred and twenty feet by three hundred of land situate in the district of St. Louis, town of St. Louis, and order that that the same be surveyed conformably to the possession of Samuel Solomon. By virtue of a permission from the proper Spanish officer, and also of actual inhabitation and cultivation, prior to and on the twentieth day of December, 1803."

It may be stated here, as part of the history of this case, that the defendant put in evidence two surveys made by the deputy surveyor in 1835, and designated as surveys 305 and 306. Survey 305 covers 128 feet on Third street, extending west toward Fourth street 160 feet, and does not include all of the ground mentioned in certificate 938 before mentioned, issued by the old board of commissioners on the tenth of June, 1811. This survey was approved by the surveyor general on the eleventh of December, 1861; but on the sixteenth of May, 1862, he made a note thereon to the effect that the survey was erroneous in this, that it should extend west to Fourth street. Survey 306 covers 95 feet by 300 feet, and purports to be a survey of a lot or parcel of land confirmed to Samuel Solomon's legal representatives by the act of congress of thirteenth of June, 1812, "the extent and boundaries of which were proven before Recorder Hunt on the twenty-sixth of November, 1825, pursuant to the act of twenty-sixth of May, 1824." Besides these two surveys put in evidence by the defendants, the plaintiffs put in evidence a survey made in 1874, which was approved by the surveyor general. This survey was made at the request of the plaintiffs for the purpose of correcting survey 305 and of making it correspond with certificate 938 issued by the old board of commissioners. It covers a strip of land 128 feet 4 inches wide, extending

from Third street west. to Fourth street, a distance of 335 1-2 feet and is bounded south by Almond street.

The plaintiffs in this suit are the heirs and grantees of the heirs of James Baird to whom Coons conveyed the property by the deed before mentioned. The defendant put in evidence a sheriff's deed dated the thirteenth of July, 1812, which professes to convey all the interest of James Baird to one Reihle; also various other deeds constituting a chain of title down to the defendant. All parties, it will be seen, claim under James Baird.

The sheriff's deed was not acknowledged, and for that reason did not convey the interest of Baird. Though invalid as a conveyance, it is good as color of title; and according to the abstracts of the evidence before us, it was admitted on the trial that the defendant and those under whom it claims have been in the adverse possession of the land ever since 1841, a period of thirty years before the commencement of this suit.

As the sheriff's deed did not convey the title of Baird, it is evident that the defense must stand alone upon the statute of limitations. No patent was ever issued, and because of this fact, the plaintiffs insist that the legal title remained in the United States until the act of congress of sixth of June, 1874 (18 Stat. at Large, part 3, p. 62); and that the statute of limitations could not and did not begin to run until the date of that act. On the other hand, the defendant says the legal title passed to Coons as assignee of Solomon by the act of congress of thirteenth of June, 1812, the first section of which provides, "that the rights, titles and claims to town or village lots, out-lots, common field lots and commons in, adjoining and belonging to the several towns or villages of St. Louis in the territory of Missouri, which lots have been inhabited, cultivated or possessed prior to the twentieth day of Decem-

ber, 1803, shall be and the same are hereby confirmed to the inhabitants of the respective towns or villages aforesaid, according to their several right or rights in common thereto: Provided, that nothing herein contained shall be construed to affect the rights of any person claiming the same lands or any part thereof, whose claims have been confirmed by the board of commissioners for adjusting and settling claims to land in said territory.''

This act operated as a grant. In other words it, by its own terms, vested the legal title in those claimants coming within its terms, and this, too, without any conditions of survey or patent; and it is also well settled that the individual confirmees under this act did not forfeit their titles thereby acquired by a failure to prove up their claims before the recorder of land titles under the act of 1824. *Glasgow v. Baker*, 85 Mo. 559 and cases cited. But it is insisted that the proviso excludes all claims from the operation of the act which had been confirmed by the board of commissioners. The proviso would have that effect, if we disregard the object of the act and give to the proviso a literal interpretation; but if we construe the proviso in the light of the object and purpose of the act, it is clear the words ''affect the rights'' mean that the law must not be construed so as to prejudice or injuriously affect the rights of persons whose claims had been confirmed by the board. The act is entitled ''an act making further provisions for settling the claims to land in the territory of Missouri; and, as its title indicates, is supplemental to the prior acts of March 2, 1805, and March 3, 1807.

These laws were all enacted to perfect Spanish claims in obedience to our treaty obligations with France. At the date of the act of 1812, many claims to lots, out-lots and common field lots had been con-

firmed by the board of commissioners, but confirmations by the board did not divest the United States of the legal title. Looking to the scope and purpose of the act, the reasonable and fair interpretation of the proviso is that the act shall operate in favor of but not to the prejudice of claims confirmed by the board, and this is the construction given to the proviso by the supreme court of the United States in the case of *Ryan v. Carter*, 93 U. S. 78. In that case, the old board confirmed the claim of Dodier to an out-lot in July, 1810. The land was surveyed in 1817, and a patent issued in 1873. It was held that the legal title passed to Dodier by operation of the act of 1812. That case is decisive of this, for there can be no difference between an out-lot and a town lot in the construction to be given to the proviso. Says the court: "It is enough to say, that it (the word affect) is often used in the sense of acting injuriously upon persons and things; and in this sense we are all of the opinion it was used in this proviso. This interpretation accords with the reason and manifest intent of the proviso." Some language used in *LeBeau v. Gaven*, 37 Mo. 557, if detached from the facts of the case there under discussion, would indicate that all claims confirmed by the board of commissioners were withdrawn from the operation of the act by the proviso; but in that case the plaintiffs endeavored to set up title under the act to defeat a claim which had been confirmed by the board, and it was held that the claim thus confirmed was prior in right, so the real question in that case was ruled in accordance with what has been said in this one. The act of 1812, therefore, vested the legal title in Coons though the claim had been confirmed by the old board of commissioners; provided the claim came within the terms of that act in other respects, and this presents the next inquiry.

That act did not take effect as a grant of undefined or floating claims; but it operated upon those town lots, out-lots, and common field lots, where there was an "existing recognized claim of title, with ascertained boundaries or boundaries which could be ascertained;" and which lots had been inhabited, cultivated or possessed prior to the twentieth of December, 1803. To bring this case within its operation it must appear that this lot was inhabited, cultivated or possessed prior to the last named date, under claim of title, and that the lot was a town lot having at that date ascertained or ascertainable boundaries. *Guitard v. Stoddard*, 15 How. 512; *Vasquez v. Ewing*, 42 Mo. 247.

The parol evidence produced on the trial tended to show that this lot was inhabited, cultivated or possessed by Solomon prior to twentieth of December, 1803, but it is not essential to speak of this evidence in detail; for the plaintiffs claim title under the commissioners' certificate dated tenth of June, 1811; and that certificate, though issued under the act of second of March, 1805, is founded on possessions of Solomon, prior to twentieth of December, 1803. The requsite possession is therefore shown by the very title papers put in evidence by them and under which they claim.

Under the instructions given, the trial court must have found that this lot had an existence as a town lot prior to the last named date, "with a defined location and boundaries." From the recitals in the deed from Coons to Baird it appears the lot had been conveyed by specific boundaries at least three times prior to 1803. The plaintiffs claim under this deed and the recitals therein are evidence against them. Besides this, the witness Kartiz says there was a house and tin-shop on the lot in 1799. There is therefore an abundance of evidence to support the finding of the trial court.

It follows from what has been said that this lot was a town lot within the meaning of the .act of 1812 and the legal title passed to Coons by operation of law. The statute of limitations is therefore a perfect and complete defense. The judgment, which was for defendant, is affirmed. BARCLAY, J., not sitting. The other judges concur.